UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04. 10564 DPW

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

DEURWARD L. HUGHES, MD,
       Plaintiff

   -vs-

MARTHA'S VINEYARD
HOSPITAL
       Defendant

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

RECEIPT # _54754_
AMOUNT $ _170_
SUMMONS ISSUED _ye)_
LOCAL RULE 4.1 _✓_
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _E.O.M_
DATE _3/23/04_

CIVIL ACTION #

MAGISTRATE JUDGE _Cohen_

## COMPLAINT AND JURY DEMAND

1.    This is a cause of action based on claims of violations of Title VII of the Civil Rights Act

of 1964 *(42 U.S.C. § 2000e* et. seq.), the Age Discrimination in Employment Act

(ADEA), 29 USC §§ 623(a)(1) and Mass. Gen. Laws chapter 151B.

2.    Jurisdiction is established pursuant to 28 U.S.C. § 1331, 29 USC § 216, 217 and 626, and

through pendant jurisdiction of the state claims.

### The Parties

3.    The plaintiff Hughes is a Massachusetts resident and former employee of the defendant

Martha's Vineyard Hospital.

4.    The defendant Martha's Vineyard Hospital is a hospital doing business in Tisbury,

Massachusetts.

### The Facts

5.    The Plaintiff Dr. Hughes is an obstetrician/gynecologist ("OB/GYN").

-1-

6.    In or about January 1, 2001, the defendant Martha's Vineyard Hospital ("the Hospital")

       hired Dr. Hughes to cover the OB/GYN practice of Jason Lew, MD.

7.    The Hospital and Dr. Hughes entered into an employment agreement ("the Agreement")

       commencing on April 1, 2001. The Agreement provided for Dr. Hughes to practice

       medicine at the Hospital and to oversee the midwifery practice, which had previously been

       affiliated with Dr. Lew. The Agreement had a three year term, and was to be

       automatically renewed for successive one year terms unless either party terminated the

       Agreement by giving 180 days prior written notice.

8.    The Agreement further provided that Dr. Hughes  would provide coverage for Jason Lew,

       M.D., until May 1, 2001, but that Dr. Hughes' coverage would be provided by "so-called

       off-Island physicians". Prior to Dr. Hughes' commencing his employment at the Hospital,

       Dr. Lew was the only "OB/GYN" in practice on Martha's Vineyard ("the Island). Dr.

       Lew is white and younger than Dr. Hughes. Dr. Lew had failed to pass the OB/GYN

       boards on at least three occasions, which, among other reasons, contributed to Dr.

       Hughes' decision that he would cover Dr. Lew's patients, but that Dr. Lew would not

       initially cover his patients.

9.    At the time he commenced work at the Hospital, Dr. Hughes was 69 years old.  He is an

       African-American.

10.   Prior to hiring Dr. Hughes, the Hospital had asked one or more of Dr. Hughes' references

       why someone of his age would still want to practice obstetrics and gynecology.

11.   Almost immediately after commencing work at Martha's Vineyard  Hospital and prior to

       his conducting a single operation at the Hospital, Dr. Hughes was informed that the

-2-

Hospital wished to monitor him in the operating room and review his cases for the past three years. This request was in contravention of the Agreement with the Hospital which provided that the "Hospital shall not exercise any control or discretion over the means, manner or method by which Physician provides professional services hereunder".

12. Dr. Hughes had not been monitored in the operating room since he was being trained as a resident close to forty years prior to being hired by Martha's Vineyard Hospital.

13. Upon information and belief, no younger or non-minority doctors with Dr. Hughes' experience, credentials and references have ever been subjected to the monitoring and review to which the Hospital sought to subject Dr. Hughes. The Hospital did not offer any explanation or reason for their decision to monitor Dr. Hughes or to request a review of his cases for the past three years.

14. In September 2001, the Hospital conducted a Performance Evaluation of Dr. Hughes. He was found to have consistently exceeded expected performance standards in every single category. The Hospital never conducted another Performance Evaluation of Dr. Hughes.

15. In October 2001, the American College of Obstetricians and Gynecologists ("ACOG") performed a comprehensive review and report of OB/GYN practice at the Hospital. In late January 2002, ACOG delivered a Report of its findings. The report concluded that Dr. Hughes competently performed his duties. On the other hand, upon information and belief, it questioned the quality of care being conducted by Dr. Lew. As the result of the report, the Hospital requested that Dr. Hughes supervise Dr. Lew for a one month period.

16.  Nevertheless, while the Hospital terminated Dr. Hughes, Dr. Lew, a white male younger than Dr. Hughes, remained on the Hospital staff, despite continued questions regarding the care he was providing. Dr. Lew was allowed to resign effective February 29, 2004.

17.  In or about February 2002, Richard Koehler, a general surgeon who frequently was the only general surgeon on call for the Hospital, refused to perform operations with Dr. Hughes or back him up for his operations. As a result, for a period of approximately 6 months, Dr. Hughes had to curtail the number of elective surgeries he could perform which might require general surgical backup. The Hospital never disciplined Dr. Koehler nor required him to back up Dr. Hughes.

18.  The Hospital's "Medical Quality Improvement Plan" adopted by the Hospital established a Medical Quality Improvement Committee ("the Committee") to review all areas of medical quality including the conduct of peer reviews. The Plan requires that the Committee include an Active Staff member representing Obstetrics/Gynecology. Rather than place Dr. Hughes, the only board certified active staff OB/GYN, on the Committee, the Hospital operated the Committee without the participation of any OB/GYN physician. The Committee did seek to conduct "peer reviews" of Dr. Hughes' cases, despite the fact that no peer (i.e. an OB/GYN physician) was on the Committee. Moreover, despite the fact that the Hospital's "Medical Quality Improvement Plan" required that when a case is identified for review, the practitioner shall be informed of "the reasons for review", the Committee sought to review some of Dr. Hughes' cases without offering any reason for the conduct of the review.

19. On or about March 25, 2003, Kevin Burchill, the Hospital's Chief Executive Officer resigned.

20. Almost immediately following Dr. Burchill's resignation, the Hospital sought to replace Dr. Hughes with a younger, non-minority doctor.

21. On April 1, 2003, the Hospital advertised for the position of employed obstetrician/gynecologist combined with the new position of Department Chairperson of the OB/GYN Department. The job was to pay $150,000 -$200,000/year. Dr. Hughes was earning $208,000/year.

22. On or about April 28, 2003, Dr. Hughes contacted the recruiter listed in the advertisement and indicated he wished to apply for the job. The recruiter informed Dr. Hughes that he had been instructed that Dr. Hughes could not apply for the job. Although Dr. Hughes was subsequently informed that he would be allowed to interview for the job, he, in fact, was never offered an interview.

23. On or about July 15, 2003, the Hospital placed an advertisement for an OB/GYN physician with the same responsibilities and salary as the prior advertisement, although the position no longer included the title of the Chairperson of the OB/GYN Department (a position, which, in fact, does not exist at the Hospital).

24. In or about August 2003, the Hospital hired Samuel Patrick Donegan, MD for the OB/GYN position. Dr. Donegan is a white male who is younger than Dr. Hughes.

25. On August 12, 2003, the Hospital terminated Dr. Hughes effective February 10, 2004.

26. The Hospital has offered numerous contradictory and pretextual reasons for Dr. Hughes' termination and its refusal to allow him to interview for the position filled by Dr. Donegan.

27.    The Hospital has offered as a pretext for terminating Dr. Hughes the fact that he allegedly only worked part-time and they desired to hire a full time doctor.

28.    In fact, Dr. Hughes worked full time. Dr. Hughes earned a salary equivalent to the salary paid his successor Dr. Donegan. Dr. Hughes was never requested to work any longer hours than he was working. Upon information and belief, Dr. Hughes worked equivalent hours to the hours being worked by his successor Dr. Donegan and performed equivalent services.

29.    Dr. Hughes was the only minority doctor on the active staff at the Hospital. There are currently none. There is not a single minority (black, Hispanic, Native-American or Brazilian) on the thirteen member Board of Directors. There is not a single minority officer at the Hospital. Upon information and belief, there is not a single minority staff nurse at the Hospital. While it is possible that there may be some minorities on the Hospital staff of which Dr. Hughes was not aware, the only blacks, Hispanics, Native-Americans or Brazilians to his knowledge employed by the Hospital worked on the custodial staff.

30.    On or about October 23, 2003, Dr. Hughes filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission. MCAD Docket No. 03 - BEM -02847; EEOC Docket Number 16CA400230.

31.    On February 11, 2004, pursuant to 804 CMR 1.15(b), Dr. Hughes withdrew his Charge of Discrimination and informed the Massachusetts Commission Against Discrimination of his intent to file a Complaint in court against defendant pursuant to M.G.L. c. 151B § 9.

-6-

32.    On February 11, 2004, pursuant to 29 CFR 1601.28(a)(2), Dr. Hughes requested the

       EEOC to issue a right to sue letter.

33.    On March 4, 2004, the EEOC issued a Notice of Right to Sue.

## COUNT I - ADEA
### (AGE DISCRIMINATION)

34.    Plaintiff repeats and incorporates by reference each and every allegation contained in

       paragraphs 1-33 of the Complaint as if fully set forth herein.

35.    Plaintiff was a member of a protected class, i.e. he was over 40 years old, performed his

       work satisfactorily and was terminated under circumstances giving rise to an inference of

       discrimination.

36.    Plaintiff's age was a motivating factor in the Hospital's decision to terminate Dr. Hughes.

37.    The Hospital knew that its actions in discharging plaintiff were in violation of federal law

       prohibiting age discrimination or the Hospital acted with reckless disregard of that law.

38.    As a direct, proximate and intended result of the foregoing, plaintiff has suffered serious

       financial losses for which the defendant Hospital is liable.

## COUNT II- MGL c. 151B
### (AGE DISCRIMINATION)

39.    Plaintiff repeats and incorporates by reference each and every allegation contained in

       paragraphs 1-38 of the Complaint as if fully set forth herein.

40.    Plaintiff was a member of a protected class, i.e. he was over 40 years old, performed his

       work satisfactorily and was terminated under circumstances giving rise to an inference of

       discrimination.

41.    Plaintiff's age was a motivating factor in the Hospital's decision to terminate Dr. Hughes.

42.    The Hospital's action in discharging Dr. Hughes was outrageous and done with reckless indifference to Dr. Hughes' rights.

43.    As a direct, proximate and intended result of the foregoing, plaintiff has suffered serious financial losses for which the defendant Hospital is liable.

## COUNT III - 42 U.S.C. § 2000e-2
## (RACE DISCRIMINATION)

44.    The plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1-43 of the Complaint as if fully set forth herein

45.    The Hospital discriminated against Dr. Hughes with respect to his compensation, terms, conditions or privileges of his employment because of his race and/or national origin.

46.    The conduct of the Hospital was the direct and proximate cause of damages suffered by Dr. Hughes.

47.    Dr. Hughes suffered damages as a result of the Hospital's conduct.

## COUNT IV- 42 U.S.C. § 1981
## (RACE DISCRIMINATION)

48.    The plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1-47 of the Complaint as if fully set forth herein.

49.    The Hospital intentionally discriminated against Dr. Hughes with respect to his compensation, terms, conditions or privileges of his employment because of his race and national origin.

50.    The Hospital deprived Dr. Hughes of his right to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

-8-

51.   The Hospital engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of Dr. Hughes.

52.   The conduct of the Hospital was the direct and proximate cause of damages suffered by Dr. Hughes.

53.   Dr. Hughes suffered damages as a result of the Hospital's conduct.

COUNT V - M.G.L. c. 151B
(RACE DISCRIMINATION)

54.   Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1-53 of the Complaint as if fully set forth herein.

55.   Plaintiff was a member of a protected class, i.e. he was an African-American, performed his work satisfactorily and was terminated under circumstances giving rise to an inference of discrimination.

56.   Plaintiff's race was a motivating factor in the Hospital's decision to terminate Dr. Hughes.

57.   The Hospital's action in discharging Dr. Hughes was outrageous and done with reckless indifference to Dr. Hughes' rights.

58.   As a direct, proximate and intended result of the foregoing, plaintiff has suffered serious financial losses for which the defendant Hospital is liable.

**PRAYERS FOR RELIEF**

WHEREFORE, the plaintiff prays that the Court enter judgment in its favor and that the Court enter the following relief:

1.   Enter Judgment against the defendants for appropriate compensatory, liquidated and punitive damages.

2. Issue equitable relief to which plaintiff is entitled.

3. Issue such other, further relief as this Court deems equitable and just under the circumstances.

4. Order defendants to pay appropriate costs and expenses of this case and to pay Plaintiff's attorneys fees and expert expenses related to bringing this litigation.

**Jury Demand**

Plaintiff demands a trial by jury.

BY PLAINTIFF DEURWARD HUGHES'
ATTORNEYS,

Stephen Schultz, Esq.
BBO # 447680
Engel & Schultz, P.C.
125 High Street
High Street Tower, Suite 2601
Boston, MA 02110
(617) 951-9980

Date: 3/19/04

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)
   Deurward L. Hughes v. Martha's Vineyard Hospital

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☐ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☒ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
      740, 790, 791, 820*, 830*, 840*, 855, 890, 892-894, 895, 950,  for patent, trademark or copyright cases

   ☐ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
      315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
      380, 385, 450, 891.

   ☐ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
      690, 810, 861-865, 870, 871, 875, 900.

   ☐ V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐   NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? – (See Local Rule 40.1(d)).
   YES ☒   NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☒   Central Division ☐   Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Stephen Schultz, Esquire
ADDRESS  Engel & Schultz, P.C., 125 High St., Boston, MA 02110
TELEPHONE NO.  (617) 951-9980

(Coversheetlocal.wpd - 10/17/02)

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Deurward L. Hughes

## DEFENDANTS

Martha's Vineyard Hospital

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Dukes
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Dukes
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Stephen Schultz, Engel & Schultz,
125 High Street, Suite 2601,
Boston, MA 02110 (617) 951-9980

ATTORNEYS (IF KNOWN)
Thomas E. Shirley
Choate, Hall & Stewart,
Exchange Place, 53 State St.
Boston, MA 02109 (617) 248-5000

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug |  | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws |  | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | ☐ 362 Personal Injury — Med. Malpractice |  | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury — Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending |  | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage |  |  |  |
| **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability |  |  |  |
| ☐ 441 Voting | **PRISONER PETITIONS** |  |  |  |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence |  |  |  |
| ☐ 443 Housing/ Accommodations | **HABEAS CORPUS:** |  |  |  |
| ☐ 444 Welfare | ☐ 530 General |  |  |  |
| ☐ 440 Other Civil Rights | ☐ 535 Death Penalty |  |  |  |
|  | ☐ 540 Mandamus & Other |  |  |  |
|  | ☐ 550 Civil Rights |  |  |  |
|  | ☐ 555 Prison Condition |  |  |  |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

29 USC §§ 622 et. seq (ADEA); 42 USC § 2000e-2; 42 USC § 1981. Plaintiff alleges he was terminated from employment as the result of age and race discrimination.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____

DOCKET NUMBER _____

DATE  3/19/04

SIGNATURE OF ATTORNEY OF RECORD
*Stephen Schultz*

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG JUDGE _____