UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * *    *
                                           *
DEURWARD L. HUGHES, MD,                     *
              Plaintiff                     *
                                           *
       -vs-                                 *
                                           *
MARTHA'S VINEYARD                           *
HOSPITAL                                    *
              Defendant                     *
                                           *
* * * * * * * * * * * * * * * * * * *      *
```

CIVIL ACTION # 04 10565 DPW

**Memorandum in Support of Plaintiff's Motion to Compel
Further Production of Documents  in Response to Plaintiff's First Request for the
Production of Documents from the Defendant Martha's Vineyard Hospital**

<u>Statement of Facts</u>

The plaintiff Deurward Hughes, M.D.,  is an obstetrician/gynecologist ("OB/GYN").  He commenced employment at the defendant Martha's Vineyard Hospital ("the Hospital") on or about April 1, 2001.

Dr. Hughes' Employment Agreement provided that he would provide coverage for Jason Lew, M.D., until May 1, 2001, but that Dr. Hughes' coverage would be provided by "so-called off-Island physicians".  Prior to Dr. Hughes' commencing his employment at the Hospital, Dr. Lew was the only "OB/GYN" in practice on Martha's Vineyard ("the Island).  Dr. Lew is white and younger than Dr. Hughes. Dr. Lew had failed to pass the OB/GYN boards on at least three occasions, which, among other reasons, contributed to Dr. Hughes' decision that he would cover Dr. Lew's patients, but that Dr. Lew would not initially cover his patients.

-1-

At the time he commenced work at the Hospital, Dr. Hughes was 69 years old.  He is an African-American.

Almost immediately after commencing work at Martha's Vineyard  Hospital and prior to his conducting a single operation at the Hospital, Dr. Hughes was informed that the Hospital wished to monitor him in the operating room and review his cases for the past three years.  Dr. Hughes had not been monitored in the operating room since he was being trained as a resident close to forty years prior to being hired by Martha's Vineyard Hospital.

In October 2001, the American College of Obstetricians and Gynecologists ("ACOG") performed a comprehensive review and report of OB/GYN practice at the Hospital.  In late January 2002, ACOG delivered a Report of its findings.  The report concluded that Dr. Hughes competently performed his duties.  On the other hand, upon information and belief, it questioned the quality of care being conducted by Dr. Lew.    As the result of the report, the Hospital requested that Dr. Hughes supervise Dr. Lew for a one month period.

Nevertheless, while the Hospital terminated Dr. Hughes, Dr. Lew, a white male younger than Dr. Hughes, remained on the Hospital staff, despite continued questions regarding the care he was providing.  Dr. Lew was allowed to resign effective February 29, 2004.

The Hospital's "Medical Quality Improvement Plan" adopted by the Hospital established a Medical Quality Improvement Committee ("the Committee") to review all areas of medical quality including the conduct of peer reviews.  The Plan requires that the Committee include an Active Staff member representing Obstetrics/Gynecology.  Rather than place Dr. Hughes, the only board certified active staff OB/GYN, on the Committee, the Hospital operated the Committee without the participation of any OB/GYN physician.  The Committee did seek to

conduct "peer reviews" of Dr. Hughes' cases, despite the fact that no peer (i.e. an OB/GYN physician) was on the Committee.  Moreover, despite the fact that the Hospital's "Medical Quality Improvement Plan" required that when a case is identified for review, the practitioner shall be informed of "the reasons for review", the Committee sought to review some of Dr. Hughes' cases without offering any reason for the conduct of the review.

On April 1, 2003, the Hospital advertised for the position of employed obstetrician/gynecologist combined with the new position of Department Chairperson of the OB/GYN Department.  The job was to pay $150,000 -$200,000/year.   Dr. Hughes was earning $208,000/year.  On or about April 28, 2003, Dr. Hughes contacted the recruiter listed in the advertisement and indicated he wished to apply for the job.  The recruiter informed Dr. Hughes that he had been instructed that Dr. Hughes could not apply for the job.  Although Dr. Hughes was subsequently informed that he would be allowed to interview for the job, he,  in fact, was never offered an interview.

On or about July 15, 2003, the Hospital placed an advertisement for an OB/GYN physician with the same responsibilities and salary as the prior advertisement, although the position no longer included the title of the Chairperson of the OB/GYN Department (a position, which, in fact, does not exist at the Hospital).  In or about August 2003, the Hospital hired Samuel Patrick Donegan, MD for the OB/GYN position.  Dr. Donegan is a white male who is younger than Dr. Hughes.

On August 12, 2003, the Hospital terminated Dr. Hughes effective February 10, 2004.

The Hospital has offered numerous contradictory and pretextual reasons for Dr. Hughes' termination and its refusal to allow him to interview for the position filled by Dr. Donegan.

-3-

The Hospital has offered as a pretext for terminating Dr. Hughes the fact that he allegedly only worked part-time and they desired to hire a full time doctor.  In fact, Dr. Hughes worked full time.  Dr. Hughes earned a salary equivalent to the salary paid his successor Dr. Donegan.  Dr. Hughes was never requested to work any longer hours than he was working.

Dr. Hughes was the only African American and arguably the only minority doctor on the active staff at the Hospital.  (The Hospital seeks to characterize Timothy Tsai, M.D., who has Asian lineage, as a minority).   There was not a single minority (black, Hispanic, Native-American or Brazilian) on the thirteen member Board of Directors.  There was not a single minority officer at the Hospital.  Upon information and belief, there was not a single minority staff nurse at the Hospital.  While it is possible that there may have been some minorities on the Hospital staff of which Dr. Hughes was not aware, the only blacks, Hispanics, Native-Americans or Brazilians to his knowledge employed by the Hospital worked on the custodial staff.

Statement of the Case

On or about October 23, 2003, Dr. Hughes filed a  Charge of Discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.   MCAD Docket No. 03 - BEM -02847;  EEOC Docket Number 16CA400230.

On or about March 19, 2004, plaintiff filed the Complaint in this case, alleging age and race discrimination as motivating factors in his termination and in respect to his compensation, terms, conditions or privileges or employment in violation of the ADEA, 42 U.S.C. § 2000e-2, 42 U.S.C. § 1981, and Mass. Gen. Laws c. 151B.

On or about July 8, 2004, plaintiff served defendant with his First Set of Interrogatories and First Request for Production of Documents.

On or about August 25, 2004, defendant served plaintiff with its responses to plaintiff's First Set of Interrogatories and First Request for Production of Documents, although documents produced by defendant were, in fact, not actually produced to plaintiff until on or about September 1, 2004.

On September 29, 2004, the parties held a Rule 37.1 Conference seeking to narrow the disputes between the parties relating to discovery provided by defendants. On October 6, 2004, the parties held a further Rule 37.1 Conference seeking to narrow the disputes between the parties. On October 6, 2004, the defendant agreed to supplement many of its responses. On October 23, 2004, the defendant served plaintiff with a "Second Supplemental Response to Plaintiff's First Set of Interrogatories", supplementing its answers to six (6) interrogatory questions (#s 2, 4, 5, 9, 12, 19). On October 23, 2004, the defendant also served plaintiff with "Defendant Martha's Vineyard Hospital's First Supplemental Response to Plaintiff Deurward L. Hughes' First Request for Production of Documents", supplementing its response to fifteen (15) document requests (#s 10, 15, 21, 27, 31, 32, 33, 34, 38, 52, 53, 54, 55, 59, 62).

This Motion to Compel is based upon the defendant's discovery responses about which the parties still have disputes regarding the adequacy of defendant's responses.

<u>Argument</u>

I.    DOCUMENT REQUESTS SEEKING DOCUMENTS RELEVANT TO SHOWING A PATTERN OF DISCRIMINATION (Doc. Req. #s 31, 32, 37, 38, 58)

Document Request # 31

Any and all documents referring or relating to allegations or charges of racial discrimination by any officer, member of the board or employee of Martha's Vineyard Hospital.

Response # 31

The Hospital objects to Request No. 31 to the extent that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Hospital further objects to this Request to the extent that it is not relevant to the present dispute. Subject to and without waiving its objections, the Hospital states that with respect to allegations, charges or claims by doctors, the Hospital has produced any non-privileged documents in its possession, custody, or control responsive to Request No. 31.

Document Request # 32

Any and all documents referring or relating to allegations or charges of age discrimination by any officer, member of the board or employee of Martha's Vineyard Hospital.

Response # 32

The Hospital objects to Request No. 32 to the extent that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Hospital further objects to this Request to the extent that it is not relevant to the present dispute. Subject to and without waiving its objections, the Hospital states that with respect to allegations, charges or claims by doctors, the Hospital has produced any non-privileged documents in its possession, custody, or control responsive to Request No. 32.

Document Request # 37

Any and all documents referring or relating to the Hospital's efforts or lack of efforts to hire minority nurses.

Response # 37

The Hospital objects to Request No. 37 to the extent it is overbroad, vague, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Hospital further objects to this Request to the extent that the term "efforts" is not defined. The Hospital further objects to this Request on the ground that the materials it seeks are not relevant to the present dispute.

Document Request # 38

Any and all documents relating to efforts on the part of minority doctors or nurses who unsuccessfully sought to be hired by the Hospital.

Response # 38

The Hospital objects to Request No. 38 to the extent it is overbroad, vague, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Hospital further objects to this Request to the extent that the term "efforts" is not defined. The Hospital further objects to this Request on the ground that the materials it seeks are not relevant to the present dispute, insofar as they seek information concerning nurses.

Document Request # 58

Any and all documents discussing or commenting on the age of one or more doctors at the Hospital.

Response # 58

The Hospital objects to Request No. 58 to the extent that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, the Hospital will produce non-privileged documents in its possession, custody, or control reasonably responsive to Request No. 58 to the extent they comment on the age of Dr. Hughes.

Plaintiff's Argument Relating to Document Request #s 31, 32, 37, 38, 58

The Hospital objects to each and every one of the above interrogatories on grounds of relevance. In some instances, they only object regarding the relevance of the request as it relates to persons other than doctors (*see Req. #s 31, 32, 37, 38* ). In one instance, they object to giving information relating to anyone other than Dr. Hughes, including information relating to other doctors *(see Req. # 58 )*. Each of these requests seeks documents which could prove a pattern of discrimination at the Hospital.

Discovery requests in discrimination cases have received particularly liberal treatment by the courts. *See*, *Trevino v. Celanese Corp.*, 701 F.2d 397, 405-406 (5th Cir. 1983) (unnecessary limitations on discovery in Title VII actions is frowned upon); *Finch v. Hercules, Inc.*, 149 F.R.D. 60, 62 (D. Del. 1993) ("Discovery will be permitted unless it is clear that the information sought can have no possible bearing upon the subject matter of the action. . . the necessity for

liberal discovery to clarify the complex issues encountered in litigation seeking to redress employment discrimination has been widely recognized.")

The courts have frequently allowed discovery of evidence relevant to showing a pattern of discrimination by the employer. In *Johansen v. NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 298 (1991), the court noted that "most cases of unlawful discrimination [are] stitched together from hiring and discharge patterns, other acts of discrimination, and the absence of plausible explanation for the employment decision." In *Brown v. Trustees of Boston University*, 891 F.2d 337, 349-350 (1ˢᵗ Cir. 1989), the court held that prior and subsequent discriminatory conduct against other employees can be probative in an employment discrimination case on the issue of motivation and intent. In *Jackson v. Harvard University*, 111 F.R.D. 472, 476 (D. Mass. 1986), Judge Garrity upheld the discovery of complaints of discrimination unrelated to tenure in a case charging discriminatory tenure decisions, ruling that [e]vidence of a discriminatory attitude toward women faculty in general is relevant to the issues of motive or intent and whether the reasons given for plaintiff's non-promotion were implicitly influenced by her gender."

In *Afrow v. Cumberland Farms, Inc.*, 1996 Mass. Super. LEXIS 494, *8, Judge Butler granted a motion to compel the production of documents relating to other complaints of discrimination by other employees than the plaintiff, concluding that "the requested information may lead to the discovery of direct or circumstantial evidence of [defendant's] general practice and policies concerning employment of individuals in the protected categories, and the application by [defendant] of certain criteria to employees not within the protected categories."

Evidence of a pattern of discriminatory conduct is also relevant to plaintiff's claim that he is entitled to punitive damages in this case. As the Supreme Court stated in *BMW of North*

-8-

*America v. Gore,* 517 U.S. 559, 576-577 (1996), "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.

       The Hospital objects to the vast majority of document requests as overbroad and burdensome. As the Court stated in *In re One Bancorp Sec. Litigation,* 134 F.R.D. 4, 11 (D. Me. 1991), the burden is on the party making the objection to show why it is unreasonably burdensome to provide requested discovery. The Hospital has not even attempted to do so.

II.    DOCUMENT REQUESTS TO WHICH DOCUMENTS WERE WITHHELD BECAUSE OF A CLAIM OF PEER REVIEW PRIVILEGE (Doc Req. #s 15, 52, 53, 54, 55, 57, 62)

Document Request # 15

Any and all documents relating to any review of Dr. Hughes' cases or practice conducted by Reza Shah, MD.

Response # 15

       The Hospital objects to Request No. 15 to the extent that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Hospital further objects to this Request on the ground that it seeks information protected from disclosure by the medical peer review privilege. Subject to and without waiving its objections, the Hospital has produced any non-privileged documents in its possession, custody, or control reasonably responsive to Request No. 15 as part of its first and second document productions, or has listed responsive documents on its privilege log.

Document Request # 52

Any and all documents relating to the decision to monitor Dr. Hughes in the operating room.

Response # 52

       The Hospital objects to Request No. 52 to the extent that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. The Hospital further objects to this Request to the extent it seeks information protected from disclosure by the medical peer review privilege. Subject to and without waiving its objections, the Hospital has

produced any non-privileged documents in its possession, custody, or control reasonably responsive to Request No. 52 as part of its second document production.

Document Request # 53

Any and all documents relating to the monitoring of Dr. Hughes in the operating room.

Response # 53

The Hospital objects to Request No. 53 to the extent that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. The Hospital further objects to this Request on the ground that it seeks information protected from disclosure by the medical peer review privilege. Subject to and without waiving its objections, the Hospital has produced any non-privileged documents in its possession, custody, or control responsive to Request No. 52 as part of its second document production or has listed responsive documents on its privilege log.

Document Request # 54

Any and all documents relating to the decision to request a review of cases which were performed by Dr. Hughes prior to his employment at Martha's Vineyard Hospital.

Response # 54

The Hospital objects to Request No. 54 to the extent that it is overbroad, vague, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and is duplicative of other Requests. The Hospital further objects to this Request on the ground that it seeks information protected from disclosure by the medical peer review privilege. Subject to and without waiving its objections, the Hospital has produced any non-privileged documents in its possession, custody, or control responsive to Request No. 52 (sic.) as part of its second document production or has listed responsive documents on its privilege log.

Document Request # 55

Any and all documents relating to the any review of one or more cases performed by Dr. Hughes prior to his employment a Martha's Vineyard Hospital.

Response # 55

The Hospital objects to Request No. 55 to the extent that it is overbroad, vague, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and is duplicative of other Requests. The Hospital further objects to this Request on the ground that it seeks information protected from disclosure by the medical peer review privilege. Subject to and without waiving its objections, the Hospital has produced any non-privileged documents in

its possession, custody, or control responsive to Request No. 55 as part of its second document production or has listed responsive documents on its privilege log.

Document Request # 57

Any and all documents relating to peer reviews conducted of cases performed by Dr. Hughes while at Martha's Vineyard Hospital.

Response # 57

The Hospital objects to Request No. 57 to the extent that it is overbroad, vague, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and is duplicative of other Requests. The Hospital further objects to this Request on the ground that it seeks information protected from disclosure by the medical peer review privilege.

Document Request # 62

Any and all documents constituting or referring to the Report of the American College of Obstetricians and Gynecologists regarding the OB/GYN Department at the Hospital issued in or about January 2002.

Response # 62

The Hospital objects to Request No. 62 to the extent it seeks information protected from disclosure by the medical peer review privilege. Subject to and without waiving its General or Specific objections, the Hospital has produced all non-privileged documents in its possession, custody, or control reasonably responsive to Request No. 62 in its first document production or has listed responsive documents on its privilege log.

Plaintiff's Argument Relating to Document Request #s 15, 52, 53, 54, 55, 57, 62

The Hospital objects to all of the above questions claiming that the information requested

is protected from disclosure by the "medical peer review privilege". The Hospital has produced

a "Privilege Log", *see Exhibit # 1 to this Memorandum*, listing eighty one (81) documents that it

claims are protected by a supposed "medical peer review privilege".[1] These documents relate to

---

[1] For one of these documents (an April 2, 2002 letter from the Board of Registration of Medicine to Dr. Hughes), defendant also claims an attorney-client privilege. Defendants do not indicate why this document, which apparently has nothing to do with an attorney-client interaction, is considered to be privileged under the attorney-client relationship.

(1) a Board of Registration inquiry re. Dr. Hughes, (2) Quality Assurance reviews of Dr. Hughes, (3) peer reviews of Dr. Hughes, (4) outside case reviews of Dr. Hughes' cases, (5) practitioner evaluations of Dr. Hughes apparently obtained when Dr. Hughes was first seeking employment with the Hospital and when his credentials were being renewed, and (6) a report of the American College of Obstetricians and Gynecologists evaluating OB/GYN care at the Martha's Vineyard Hospital.

In the case of *Krolikowski v. University of Massachusetts*, 150 F. Supp. 2d. 246 (D. Mass. 2001), Magistrate Dein addressed an identical claim by a Hospital seeking to protect "peer review" documents from discovery in a federal discrimination case.  Magistrate Dein noted that in a federal question case where the court is also hearing state law claims pursuant to supplemental jurisdiction, federal privilege law governs the claims in the action. *Id.* at 248; *see, also, Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 226-27 (D. Mass. 1997).* (citing cases). Citing numerous cases, Magistrate Dein noted that "many federal courts have declined to adopt a state's medical peer review privilege statute into federal common law. This is especially true in the context of federal discrimination cases." *Id.*   The Court concluded that "'disclosure of documents and information bearing primarily on employment issues does not materially conflict with the fundamental objectives of promoting quality health care served by the peer review principle." *Holland, 971 F. Supp. at 389.* With a protective order in place, the impact of disclosure of peer review communications is lessened and the balance tips in favor of the plaintiff."  *Id. at 249.*

The case of *Marshall, M.D. v. Spectrum Medical Group*, 198 F.R.D. 1 (D. Me. 2000) is particularly on point.  The plaintiff Dr. Marshall brought an age discrimination claim against the

defendant Hospital, alleging, among other things, that the defendant had "abused the credentialing process" to cast doubt about the plaintiff.  In the case before the Court, plaintiff Hughes claims that defendant abused the credentialing process by subjecting  him to review to which other doctors were not subjected.  The Court rejected the state peer review privilege, noting that the articulated justification for confidentiality in medical peer review matters is that patient care will suffer if a physician's candid comments are subsequently used in malpractice or other cases to form a basis of liability, and that these concerns are not applicable in a discrimination case brought by a doctor, who is claiming that the peer review process has been abused.  *Id.* at 5.

The case of *Patt, M.D. v. Family Health Systems,* 189 F.R.D. 518 (E.D. WI 1999), has a particularly learned discussion of the issue of whether federal courts should reject medical peer review privileges in federal discrimination cases.  The court found that the majority of courts have found that comity should not be afforded to medical peer review statutes.  *Id. at 524.*  The court noted that "because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed."  *Id.*  The case contains a lengthy discussion of the Health Care Quality Improvement Act of 1986, *42 U.S.C. § 11101,* et seq. ("HCQIA") and specifically notes how Congress  addressed the creation of a federal privilege of peer review documents and ultimately rejected the proposal.  *Id.* The Court concludes that Congress accorded more weight to vindication of civil rights than to the interests in the confidentiality of the peer review process. *Id.*

In addition to the arguments noted above which relate to all of the documents sought by plaintiff, there is particular reason to compel production of those documents which relate to (1) evaluations of Dr. Hughes at the time he was initially seeking employment at the Hospital and (2) the report of the American College of Obstetrics and Gynecology.  Defendant contends that

one reason they required Dr. Hughes to be monitored, unlike other younger, white doctors, was that they were unable to ascertain through references whether he had any recent clinical (as opposed to teaching) experience.  Plaintiff should be allowed to review the physician evaluation forms obtained at the time Dr. Hughes was being subjected to monitoring in order to ascertain whether defendant, in fact, had been unable to determine whether Dr. Hughes had performed any recent clinical experience.  Dr. Hughes was informed that Dr. Donegan (who replaced Dr. Hughes) was shown a copy of the report of the American College of Obstetrics and Gynecology shortly after he began working at Martha's Vineyard Hospital.  To the extent that the document might have been privileged, the Hospital clearly waived that privilege by showing the document to Dr. Donegan.

III.    DOCUMENT REQUESTS RELATING TO DISPARATE TREATMENT OF DR. HUGHES WHEN COMPARED TO TREATMENT OF JASON LEW, M.D. (Doc. Req. #s 63, 64, 65)

Document Request # 63

Any and all documents relating to complaints or criticisms of Jason Lew, M.D.

Response # 63

        The Hospital objects to Request No. 63 to the extent that it is overbroad, vague, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  The Hospital further objects to this Request to the extent it seeks information protected from disclosure by the medical peer review privilege.  Finally, the Hospital objects to this Request on the ground that it is not relevant to the present dispute.

Document Request # 64

Any and all documents relating to investigations of fraudulent billing or record-keeping practices by Dr. Lew.

Response # 64

        The Hospital objects to Request No. 64 to the extent that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  The Hospital objects to this Request on the ground that it is not relevant to the present dispute.

Document Request # 65

Any and all documents relating or referring to whether to terminate or otherwise discipline Jason Lew, M.D.

Response # 65

      The Hospital objects to Request No. 65 to the extent that it is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Hospital further objects to this Request to the extent it seeks information protected from disclosure by the medical peer review privilege. Finally, the Hospital objects to this Request on the ground that it is not relevant to the present dispute.

Plaintiff's Argument Relating to Document Request #s 63, 64 and 65

      Plaintiff adopts by reference its argument set forth in the *Memorandum in Support of Plaintiff's Motion to Compel Further Answers in Response to Plaintiff's First Set of Interrogatories to the Defendant Martha's Vineyard Hospital re. Interrogatory Question #s 21 and 22, at pp. 3-5.*

IV.    DOCUMENT REQUESTS FOR WHICH EVIDENCE INDICATES THAT DEFENDANT DELIBERATELY WITHHELD RELEVANT DOCUMENTS (Doc. Req. #s 33, 34)[2]

Document Request # 33

Minutes of all Martha's Vineyard Hospital Board of Directors meetings, Executive Committee meetings and Joint Conference Committee meetings discussing allegations of wrongful race and/or age discrimination at Martha's Vineyard Hospital or the Hospital's policy toward race and/or age discrimination.

Response # 33

      The Hospital objects to Request No. 33 to the extent that it is overbroad, a compound request and unduly burdensome. Subject to and without its objections, the Hospital has produced any non-privileged documents in its possession, custody, or control reasonably responsive to Request No. 33 in its first and second document productions.

Document Request # 34

---

     [2]    Plaintiff does not suggest that defendant's counsel has deliberately withheld any documents, but that its client has shown a willingness to deliberately withhold documents.

Minutes of all Martha's Vineyard Hospital Board of Directors meetings, Executive Committee Meetings and Joint Conference Committee meetings discussing the need or desire to hire younger doctors.

<u>Response # 34</u>

The Hospital objects to Request No. 34 to the extent that it is overbroad and unduly burdensome. The Hospital further objects to this Request to the extent that it does not define the term "younger." Subject to and without waiving its objections, the Hospital states that it does not have any documents in its possession, custody, or control reasonably responsive to Request No. 34.

<u>Plaintiff's Argument Relating to Document Request #s 33, 34</u>

The Hospital claims it has produced all documents responsive to Request #s 33 and 34.

It clearly did not do so the first time it claimed to have complied with the request, when it

withheld a critically relevant document that it did not realize plaintiff had obtained from another

source.

The Hospital has now produced only two documents responsive to Request #s 33 and 34.

Document # MVH306 (minutes of a Board of Trustees meeting held on January 27, 2001) states

that "Medical Staff had feelings that age had much to do with mixed feelings of Dr. Hughes

working in Maternity." It is simply not believable that the "mixed feelings" about Dr. Hughes'

age were only expressed in one conversation.

The Hospital initially did not produce the Minutes of the Joint Conference Committee

Meeting held on August 17, 2001. *See Exhibit # 2 to this Memo.* The minutes of this meeting

of the Joint Conference Committee (which included both Hospital officers and member of the

Board of Trustees) noted that (1) "Dr. Hughes' initial encounter with Executive Committee -

issue was Dr. Hughes' ability to practice medicine. The age issue was carried on for the next

several months even after the credentials were approved" and (2) "No others have been treated

as poorly as Drs. Hughes and Kriedman (Dr. Hughes' wife) have been recently." After

plaintiff's counsel noted defendant's failure to produce these minutes at the first Rule 37.b.1

Conference, defendant's counsel later informed plaintiff's counsel that she had been informed by

her client that they did not have a copy of these minutes.  Yet, somehow, a copy of these minutes then showed up as part of defendant's supplemental production.

Moreover, one former Board member has informed plaintiff that there were ongoing discussions in the Board about the desire to bring younger doctors into the Hospital.  Yet, no documents reflecting these discussions were produced.

Many of the minutes produced to the plaintiff have been produced with large sections redacted.  Yet, none of these redactions are noted in the Hospital's privilege log.

Under all of these circumstances, and given the existence of a Confidentiality Agreement, the Hospital should be ordered to produce unredacted all of the minutes for each and every meeting of the Hospital's Board of Directors, Executive Committee and Joint Conference Committee in order to allow plaintiff to assure that the Hospital is not continuing to withhold relevant documents and to determine whether there are any other missing minutes, as evidenced by gaps in the dates for which minutes should exist.[3]

<u>Conclusion</u>

For the reasons stated in this Memorandum, Plaintiff's Motion to Compel Further Production of Documents  in Response to Plaintiff's First Request for the Production of Documents from the Defendant Martha's Vineyard Hospital should be allowed.

BY PLAINTIFF'S ATTORNEY,


 s/Stephen Schultz
Stephen Schultz, Esq.
BBO# 447680
Engel & Schultz, P.C.
125 High Street, Suite 2601
Boston, MA 02110
(617) 951-9980 (Tel)
(617) 951-0048 (Fax)

Date: October 25, 2004

---

[3]        Plaintiff has no objections if the names of any patients are redacted from the minutes.

-17-

Certificate of Service

I hereby certify that I served a copy of the above-entitled document on counsel of record for defendant in the case by first class mail/by hand on this 25th day of October, 2004.


   s/Stephen Schultz   
Stephen Schultz