UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
04-10564-DPW

DEURWARD L. HUGHES, M.D.

Plaintiff

v.

MARTHA'S VINEYARD HOSPITAL

Defendant

ORDER

December 29, 2004

COHEN, M.J.

After hearing, plaintiff's Motion to Compel Further Answers in Response to Plaintiff's First Set of Interrogatories to Defendant Martha's Vineyard Hospital (# 13) and Motion to Compel Further Production of Documents in Response to Plaintiff's First Request for Production of Documents from Defendant Martha's Vineyard Hospital (# 15) are denied in all respects.  Those motions are denied primarily for the reasons set forth in the opposition filed by the defendant (# 17), with the following observations:

   1.   To the extent that plaintiff seeks information concerning the hiring of, or

efforts to hire, minority nurses and other non-physician officers of the defendant, and to the extent that plaintiff seeks information concerning discrimination charges lodged by nurses and/or other non-physician officers of the defendant, plaintiff has simply fallen far short of establishing the relevance of these overly broad requests.  As defendant observes, and as well-reasoned precedent of this and other courts have established, there are limits to discovery, even in discrimination cases, and plaintiff's requests go beyond the pale of relevance when seeking information relating to other persons or groups of persons not similarly situated. *E.g.*, *Whittingham v. Amherst College*, 164 F.R.D. 124, 127 (D. Mass. 1995); *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983); *Griffiths v. Cigna Corp.*, No. 91-2356, 1992 U.S. Dist. LEXIS 754, at *5 (D. Pa. Jan. 23, 1992); *Sykes v. Stores, No. OOC5112*, 2002 WL 554505, at *3 (N.D. Ill. Apr. 15, 2002); *Jackson v. Harvard Univ.*, 111 F.R.D. 472 (D. Mass. 1986).  And for the reasons set forth in defendant's opposition (pp. 7-8), it is clear that the positions of the nurses and other non-physician officers of the defendant are not even remotely similar to the position previously held by the plaintiff.

2.   In connection with plaintiff's attempts to rummage through various medical peer reports and forms withheld by the defendant, to the extent that plaintiff contends that, in federal question jurisdiction cases such as this case, state law privilege does not automatically provide the rule of law, plaintiff is undoubtedly correct.  To the extent, however, that plaintiff seemingly suggests that the inquiry ends there, he is surely wrong.

For one thing, persuasive and well-reasoned  precedent suggests that <u>federal</u>

law recognizes a medical peer review privilege. *E.g.*, *Weekoty v. United States*, 30 F. Supp.2d 1343, 1346-1347 (D.N.M. 1998); *Whitman v. United States*, 108 F.R.D. 5, 7 (D.N.H. 1985).

And for another, even those cases which suggest otherwise, including *Krolikowski v. Univ. of Mass.*, 150 F. Supp.2d 246, 249 (D. Mass. 2001), in which plaintiff finds succor, nevertheless conclude that it is a question of balance. A balance between the need for discovery, on the one hand, and the purpose served by the asserted privilege, on the other. *See e.g.*, *Commissioner of Internal Revenue*, 568 F.2d 531 (7th Cir. 1977); *Marshall v. Spectrum Med. Group*, 198 F.R.D. 1, 3-4 (D. Me. 2000); *Patt v. Family Health Sys., Inc.*, 189 F.R.D. 518, 524 (E.D. Wis. 1999).

As to the latter, it can hardly be gainsaid that the medical peer review privilege serves a salutary, indeed, a compelling interest, both state and federal - to wit, the quality of medical care provided to all in need. And it likewise cannot be augured against that confidentiality of the forms and reports such as those sought by the plaintiff in this case is a necessary component of the medical peer review process. Otherwise, those peers who provide candid assessments on the assumption that those analyses are imbued with a layer of confidentiality will be forever chilled - all to the death knell of the peer review process itself, and that which it safeguards.

As to the former, on the other hand, *i.e.*, the need for such discovery in the factual circumstances of this case, plaintiff has proffered nothing which, on balance, even remotely approaches a reasoned basis upon which to eviscerate the privilege. To

be sure, plaintiff says that he, unlike others,[1] was subjected to a peer review process. But, to the extent that that is a given, that is something already known to the plaintiff, and nothing in the underlying reports and forms generated by the peer review process could conceivably add more.  The long and short of the matter is that the defendant does <u>not</u> contend - now or then - that the plaintiff provided substandard medical care, and nothing in the underlying reports and forms could conceivably provide any basis for trumping the salutary purpose served by the medical peer review process.

3.   What we have indicated above *vis a vis* plaintiff's efforts for wholesale discovery of information relating to the hiring of, or efforts to hire, minority nurses and non-physician officers of the defendant applies equally to plaintiff's efforts to rummage through matters relating to the retention and departure of Dr. Lew as a staff physician. The long and short of that matter is that there is simply no rational comparison between the position and departure by Dr. Lew, a staff physician, and the <u>employment</u> position held by the plaintiff, and nothing gained by that foray would have any bearing on any issue raised in this suit, for the reasons set forth by the defendant in its opposition, to wit:

> There is no discernable basis for Plaintiff to se k specific discovery relating solely to Dr. Lew's practice and resignation. A comparison of Plaintiff's employment termination with Dr. Lew's decision not to continue to practice at the Hospital is not relevant to this dispute and cannot be used to establish a discrimination claim because: (1) Plaintiff was Defendant's employee; Defendant could terminate his contract at any time upon 180 days notice, whereas Dr. Lew was merely a member of the Hospital staff; (2) even after his employment contract ended, Plaintiff was free to retain staff privileges; and (3) contrary to Plaintiff's assertion,

---

[1]   Of course, insofar as we are aware, there were no others similarly situated to the plaintiff.  That is to say, we are not aware of any other physician who was hired as an <u>employee</u> of the defendant.

Defendant did not allow Dr. Lew to resign from the staff under favorable conditions - his privileges lapsed on February 29, 2004, and he chose not to renew them.

4. To the extent that plaintiff seeks more in terms of Hospital minutes by way of Document Requests Nos. 33 and 34, this court finds and concludes that, notwithstanding the initial failure to disclose one or two documents in the face of plaintiff's all-encompassing and overly broad document requests, the defendant has produced all documents responsive to those requests.[2] In these circumstances, plaintiff is entitled to no more.

For all of these reasons, plaintiff's Motion to Compel Further Answers in Response to Plaintiff's First Set of Interrogatories to Defendant Martha's Vineyard Hospital (# 13) and Motion to Compel Further Production of Documents in Response to Plaintiff's First Request for Production of Documents from Defendant Martha's Vineyard Hospital (# 15) are denied in all respects.

The file is hereby ordered returned to the Clerk.

_____
UNITED STATES MAGISTRATE JUDGE

---

[2] In this court's view, plaintiff's off-hand suggestion that the defendant has purposefully withheld relevant documents is based on more fancy than facts. To say that the defendant must turn over all minutes of all meetings of the Board of Trustees and other Hospital committees, without any temporal or subject matter limitation, goes much too far based on much too little. And that is so regardless of the existence of a confidentiality agreement.