UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEURWARD L. HUGHES, MD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04 10564 DPW |
| ) | |
| MARTHA'S VINEYARD HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

## AFFIDAVIT OF TIMOTHY WALSH

I, Timothy Walsh, depose and state as follows:

1.      I was born on February 26, 1947.

2.      I have served as the Chief Executive Officer of Martha's Vineyard Hospital (the "Hospital") from April 2002 to present. It is the only hospital on Martha's Vineyard Island (the "Island"). It is licensed for a maximum of 15 beds.

3.      Prior to becoming the CEO of the Hospital in 2002, I was not involved in any prior decisions or issues involving Plaintiff Deurward L. Hughes ("Plaintiff").

4.      There are three principal categories of medical staff at the Hospital: active, associate, and replacement. Active staff members must have their primary practice on the Island. Associate staff have their primary affiliation with another hospital. Replacement staff members may replace active staff members for up to 90 days per year.

5.      There are presently 28 active staff members, 24 associate staff members, and 19 replacement staff members at the Hospital.

6.    In addition to having medical staff privileges, some physicians are also employees of the Hospital. This is presently true for 14 of the Hospital's 71 staff members.

7.    Dr. John MacArthur ("Dr. MacArthur"), the Hospital's Chief of Staff at all times relevant to this action, was born on January 17, 1934.

8.    Dr. Richard Koehler ("Dr. Koehler"), a surgeon formerly employed by the Hospital, was born on May 27, 1956. Dr. Kohler announced his decision to resign from his position with the Hospital due to irremediable conflicts with then-CEO Kevin Burchill ("Mr. Burchill") on January 9, 2002.

9.    Dr. Stephen London ("Dr. London"), an anesthesiologist employed by the Hospital, was born on January 16, 1954.

10.    My predecessor, Mr. Burchill, began employment with the Hospital as its CEO in October 1999. He announced his resignation on March 23, 2002, effective April 17, 2002.

11.    From 1982 until early 2001, Dr. Jason Lew ("Dr. Lew") was the only OB-GYN on the Hospital's active staff. Dr. Lew was never an employee of the Hospital.

12.    Dr. Lew entered an agreement with the Hospital in 1998 to subsidize Katherine Chase's midwifery practice; this agreement was scheduled to expire on March 31, 2001.

13.    There was no one precipitating event that led to my decision to terminate the Plaintiff's contract with the Hospital. Given the concerns I articulated during my deposition (see Statement of Undisputed Material Facts ¶¶ 52-53), I did not believe Plaintiff was the right person to lead the Hospital's effort to expand its OB-GYN practice, increase its patient volume, and attract OB-GYN patients who were going off-Island for care.

2

14.     I similarly concluded that Dr. Lew was not a viable candidate for the new and expanded role I envisaged.  As a result, a placement firm was retained and instructed to focus on external applicants.

15.     Dr. Lew elected not to seek medical staff privileges beyond February 29, 2004 pursuant to an agreement in which the Hospital purchased his OB-GYN practice.

16.     Dr. Gerald Morris ("Dr. Morris") joined the active staff on March 21, 2004 and entered into an employment relationship with the Hospital on June 22, 2004.  Dr. Morris, an African American, practices internal medicine.  He remains on the active staff and in the employ of the Hospital through the present.

17.     The Hospital does not specifically maintain records reflecting the ages of its medical staff members.

18.     The following documents are kept in the Hospital's ordinary course of business, and are submitted herewith in support of the Defendant's Motion for Summary Judgment:

a.      Attached hereto as <u>Exhibit 1</u> is a true and accurate copy of an October 20, 2000 Letter from J. Butterick to J. MacArthur.

b.      Attached hereto as <u>Exhibit 2</u> are true and accurate copies of pages from Martha's Vineyard Hospital's Medical Staff's Credentials Policy.

c.      Attached hereto as <u>Exhibit 3</u> are true and accurate copies of the February 23, 2001 Medical Executive Staff Business Minutes ("MEC Bus. Min.").

d.      Attached hereto as <u>Exhibit 4</u> are true and accurate copies of the March 16, 2001 Joint Conference Committee Minutes.

3

3918449v1

e.    Attached hereto as <u>Exhibit 5</u> are true and accurate copies of the July 17, 2001 MEC Bus. Min.

f.    Attached hereto as <u>Exhibit 6</u> are true and accurate copies of the June 26, 2001 MEC Bus. Min.

g.    Attached hereto as <u>Exhibit 7</u> are true and accurate copies of the April 27, 2001 OB/GYN Coverage Meeting Minutes.

h.    Attached hereto as <u>Exhibit 8</u> is a true and accurate copy of an August 2, 2001 Memorandum from S. Clauss-Zanger to K. Burchill.

i.    Attached hereto as <u>Exhibit 9</u> is a true and accurate copy of an August 3, 2001 Letter from J. Butterick to B. Tsikitas.

j.    Attached hereto as <u>Exhibit 10</u> are true and accurate copies of the August 14, 2001 MEC Bus. Min.

k.    Attached hereto as <u>Exhibit 11</u> are true and accurate copies of the August 24, 2001 Board of Trustees Meeting Minutes.

l.    Attached hereto as <u>Exhibit 12</u> is a true and accurate copy of a October 23, 2001 Memorandum from N. Hartmann to D. Hughes and J. Lew

m.    Attached hereto as <u>Exhibit 13</u> are true and accurate copies of the February 12, 2002 MEC Bus. Min.

n.    Attached hereto as <u>Exhibit 14</u> is a true and accurate copy of a March 26, 2002 Memorandum from K. Burchill to D. Hughes.

o.    Attached hereto as <u>Exhibit 15</u> are true and accurate copies of the April 26, 2002 Joint Conference Committee Minutes.

4

p.       Attached hereto as <u>Exhibit 16</u> is a true and accurate copy of an August 21, 2002 Memorandum from S. Clauss-Zanger to T. Walsh.

q.       Attached hereto as <u>Exhibit 17</u> is a true and accurate copy of an August 22, 2002 Memorandum from S. Clauss-Zanger to T. Walsh.

r.       Attached hereto as <u>Exhibit 18</u> is a true and accurate copy of an August 22, 2002 Memorandum from S. Clauss-Zanger to J. Lew.

s.       Attached hereto as <u>Exhibit 19</u> is a true and accurate copy of an August 26, 2002 Memorandum from H. Austin to D. Hughes and J. Lew.

t.       Attached hereto as <u>Exhibit 20</u> are true and accurate copies of the September 10, 2002 MEC Bus. Min.

u.       Attached hereto as <u>Exhibit 21</u> is a true and accurate copy of a September 10, 2002 Memorandum from S. Clauss-Zanger to D. Hughes and J. Lew with handwritten notes.

v.       Attached hereto as <u>Exhibit 22</u> is a true and accurate copy of a September 20, 2002 Memorandum from S. Clauss-Zanger to T. Walsh.

w.       Attached hereto as <u>Exhibit 23</u> is a true and accurate copy of an Acknowledgment of OB/GYN Coverage.

x.       Attached hereto as <u>Exhibit 24</u> is a true and accurate copy of a October 3, 2002 Letter from M. Engel to T. Walsh.

y.       Attached hereto as <u>Exhibit 25</u> are true and accurate copies of the December 6, 2002 Joint Conference Committee Minutes.

z.       Attached hereto as <u>Exhibit 26</u> are true and accurate copies of the January 27, 2001 Board of Trustees Meeting Minutes.

Signed under the pains and penalties of perjury this _28th_ day of April, 2005.

Timothy Walsh

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON: 5·2·05

# Exhibit 1



# CHARLTON
## MEMORIAL HOSPITAL

October 30, 2000    *Fall River Site of*
*Southcoast Hospitals Group*

John MacArthur, M.D.
Martha's Vineyard Hospital
Linton Lane
Oak Bluffs, MA

Dear Dr. MacArthur,

Nice to see you on Saturday. My wife and I vacated the island after the meeting with the threat of cold temperatures and high winds. Our house is getting renovated and is presently without heat. I didn't want to end my days freezing solid in the basement. We'll be back, however.

I did want to put a few thoughts down on paper for you and other members of the Medical Executive Committee about the two OB/Gyn physicians currently seeking staff membership and privileges. My thoughts fall into three categories.

First, both of these obstetrician-gynecologists meet the medical staff requirements for licensure, training, and insurance. We have no reason to not send them applications for staff membership and this has been done. One of these individuals is only going to do obstetrical coverage when Dr. Lew is not available and he will be paid by the hospital. This coverage is currently underwritten by the hospital and so that situation does not change. I understand that this physician does not intend to maintain an ongoing practice of obstetrics and gynecology, although he has requested full gynecological privileges as he must if he is to provide emergency coverage. I assume the current covering obstetricians have full obstetric and gynecologic privileges.

The other physician has requested only limited hospital privileges. It appears that this may be consistent with her level of liability insurance. Except in rare circumstances, the hospital medical staff must act only upon the request from an applicant. In general, the medical staff cannot demand that any practitioner apply for privileges that they do not wish to use. In this particular circumstance, it would seem beneficial for this gynecologist to have at least some privileges to see her own patients in the hospital ED.

She has requested what appear to be a handful of relatively minor, outpatient surgical procedures and she needs to understand where those procedures get done. It would appear that those kinds of things would be done in the ambulatory surgery center and not in the ED, but this does need to be clarified.

Second, as regards their malpractice suit history, both of these obstetrician-gynecologists have a number of suits that have been filed against them. Most were dropped and only for one or two against each of them were monetary settlements made. I have reviewed the malpractice experience of some of our OB-Gyns here in Southcoast

*Spoke To Mark Woodland – RPD*
*Jan Snyder – Dept. Chair*
*508 – 240-6081*    **CONFIDENTIAL**

☒  *Uniting for our community*

363 Highland Avenue
Fall River, Massachusetts 02720
(508) 679-3131

**MVH 0241**

and my perusal of their records as regards liability claims confirms my belief that obstetrics and gynecology is a high-risk specialty where being sued for malpractice is a fact of life. I have several excellent OB-Gyn providers here in Southcoast who have multiple suits and settlements.

The practice situation for both of the physicians applying to the medical staff were, I am sure, even higher risk because of the nature of the patient populations that they served and the fact that there was a residency teaching program involved. The collapse of the AHERF system in Pennsylvania only contributes more confusion to sorting this out. There appear to be pending cases for at least one of these doctors. They should know the details of each. I would also point out that with the statuette of limitations being what it is for newborns, both of these doctors may still be sued for cases and they may not know about this for some time.

Lastly, as I reviewed their applications, they are just simply not yet complete. References have been named and letters have been sent. To date, none have been returned. Past licenses, DEA, MCSR, and malpractice insurance, it is the references that remain the critical part of their applications that need to be reviewed. With faxes and e-mail, those can usually be obtained quite promptly, but let us not forget that it is always the responsibility of the applicant to get us the information that we need to evaluate an application.

I am planning on being at the hospital on November 10 and should be there by the time of the CME lecture. I would be happy to talk with any of you about this situation at that time.

And finally, I am taking a group of new medical staff leaders to an excellent meeting in January. I will be taking all of my medical staff presidents to a three-day seminar put on by Horty Springer. They are a Pittsburgh-based law firm specializing in health care law. I use them extensively for medical staff issues, bylaws, and a myriad of other things. The meeting is excellent. You can get risk management CME's. You are welcome to come along with our group if you would like to. The meeting is at the Breakers in West Palm Beach and runs from January 18 to 20. Most of us are going down on Wednesday the 17th. I am returning on the 20th, but some of us are staying over to the 21st. My deal with my docs is that I pay for their airfare, expenses and their room. If they wish to bring their wife or a guest, that is their responsibility. This would afford you an opportunity to meet some flesh and blood docs, just like yourself, who are struggling with medical staff governance issues. It is an excellent meeting and I always learn a lot. Think about it and let me know. I have already mentioned this to Kevin and I think he is interested.

That is plenty. Sorry this went so long, but I felt that I needed to expand on some of my observations from the material I reviewed last week. Please feel free to call or write with any questions.

Sincerely,

James D. Butterick, M.D.
Chief Medical Officer

CONFIDENTIAL
MVH 0242

# Exhibit 2



# MEDICAL STAFF

# CREDENTIALS POLICY

| | |
|---|---|
| Approved: | May 2000 |
| Amended: | August 2002 |
| Amended: | October 2002 |
| Amended: | January 2003 |

**MVH 1175**

incomplete thirty (30) days after the applicant has been notified of the additional information required shall be deemed to be withdrawn. It is the responsibility of the applicant to provide a complete application, including adequate responses from references.

(e)    The Chief of Staff shall post or circulate the name of any applicant who satisfies the threshold criteria and submits a complete application so that each Medical Staff appointee may have an opportunity to submit to the Hospital Credentials Committee, in writing, information bearing on the applicant's qualifications for Medical Staff appointment or clinical privileges. In addition, any current Medical Staff appointee shall have the right to appear in person before the Hospital Credentials Committee to discuss in private and in confidence any concerns the appointee may have about the applicant.

### 2.C.3.  Hospital Credentials Committee Procedure:

(a)    The Hospital Credentials Committee shall examine evidence of the applicant's character, professional competence, qualifications, prior behavior, and ethical standing and shall determine, through information contained in references given by the applicant and from other sources available to the committee, including, whether the applicant has established and satisfied all of the necessary qualifications for appointment and for the clinical privileges requested.

(b)    As part of the process of making its recommendation, the Credentials Committee may request to meet with the applicant to discuss the applicant's

18

application, qualifications, and clinical privileges requested.

(c)     The Credentials Committee may use the expertise of the members of the Medical Staff privileged in the same clinical specialty, or an outside consultant, if additional information is required regarding the applicant's qualifications.

(d)     If, the Credentials Committee's recommendation for appointment is favorable, the Credentials Committee shall recommend provisional assignment. All recommendations to appoint, including provisional appointment, must specifically recommend the clinical privileges to be granted, which may be qualified by any probationary or other conditions or restrictions as deemed appropriate by the committee. The Credentials Committee must use the expertise of the department chairperson, when applicable, as part of the process of making its recommendation.

(e)     If the recommendation of the Credentials Committee is delayed longer than ninety (90) days after receipt of the report, the Chair of the Credentials Committee shall send a letter to the applicant, with a copy to the Chief Executive Officer, explaining the reasons for the delay.

Approved May 2000
Amended August 2002
Amended January 2003

MVH 1196

**2.C.4.  Credentials Committee Report:**

(a)    Not later than ninety (90) days from its receipt of the application and all

required and requested information, the Credentials Committee shall send its

recommendation and written findings in support thereof to the Hospital

Medical Staff Committee.  The completed application and all supporting

documentation shall accompany the Credentials Committee's

recommendations and findings.  Each recommendation shall state one of the

following:

(1)    that the applicant be appointed to the Medical Staff;

(2)    that the applicant's application be deferred for further consideration; or

(3)    that the applicant be rejected for Medical Staff appointment.

(b)    When the Credentials Committee recommends appointment to the Medical

Staff, it shall also make a specific recommendation regarding the clinical

privileges to be granted, and any limitations or conditions on the appointment

or the privileges.

**2.C.5.  Medical Staff Committee Procedure:**

(a)    At its next regular meeting after receipt of the written findings and

recommendation of the Credentials Committee, the  Medical Staff Committee

shall:

(1)    adopt the findings and recommendation of the Credentials Committee;

(2)    refer the matter back to the Credentials Committee for further

consideration and preparation of responses to specific questions raised

20

by the Medical Staff Committee prior to its final recommendation; or

    (3)    set forth in its report and recommendation clear and convincing reasons, along with supporting information, for its disagreement with the Credentials Committee's recommendation.

    (b)    If the recommendation of the Medical Staff Committee is favorable to the applicant, it shall transmit its recommendation through the Chief Executive Officer to the Hospital Board (or its designee), including the findings and recommendation of the Credentials Committee. All recommendations to appoint must also specifically recommend the clinical privileges to be granted, which may be qualified by any probationary or other conditions or restrictions relating to such clinical privileges.

    (c)    If the recommendation of the Medical Staff Committee would entitle the applicant to request a hearing pursuant to this policy, it shall be forwarded to the Chief Executive Officer who shall promptly notify the applicant in writing, certified mail, return receipt requested. The Chief Executive Officer shall then hold the application until after the applicant has exercised or waived the right to a hearing as provided in this policy, after which the Chief Executive Officer shall forward the recommendation of the Medical Staff Committee, together with the complete application and all supporting documentation, to the Hospital Board for further action.

    (d)    Upon receipt of a favorable recommendation from the Medical Staff Committee that the applicant be granted appointment and the requested clinical privileges, the Hospital Board (or its designated committee) may:

21

(1)    appoint the applicant and grant clinical privileges as recommended; or

(2)    refer the matter back to the Credentials Committee or to another source inside or outside the Hospital for additional research or information; or

(3)    reject the recommendation. If the Hospital Board determines to reject the favorable recommendation, it should first discuss the matter with the Chief of Staff. If the Hospital Board's determination remains unfavorable to the applicant, that determination and the reasons in support thereof, shall be sent to the Chief Executive Officer, who shall promptly notify the applicant in writing, certified mail, return receipt requested. The Hospital Board shall make no final decision until the applicant has exercised or waived the right to a hearing and appeal as outlined in this policy.

## 2.D: PROVISIONAL STATUS

### 2.D.1. Duration of Initial Provisional Appointment:

(a)    All initial appointments to the Medical Staff (regardless of the category of the staff to which the appointment is made), and all initial clinical privileges shall be provisional for a period of twelve (12) months from the date of the appointment or longer if recommended by the Credentials Committee or its Chairperson.

22

Approved May 2000
Amended August 2002
Amended January 2003

MVH 1199

# Exhibit 3

BUSINESS MINUTES

COMMITTEE: Medical Staff Committee

DATE: February 23, 2001

PAGE: 1

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| 1.0 NEW BUSINESS: | | | | |
| 1.1 CREDENTIALS: | | | | |
| ACTIVE STAFF: Deurward Hughes, MD Obstetrics/Gynecology Initial Appointment | Application for initial appointment to Active Staff in Obstetrics and Gynecology. Education and experience commensurate with privileges requested. No outstanding quality issues. Request to note in minutes that recent clinical volume could not be established for Dr. Hughes. | Motion to approve one year initial appointment to Active Staff. | Motion approved. To Board of Trustees. | Resolved. |

REDACTED

There being no further business at this time, the meeting was adjourned.

CONFIDENTIAL
MVH 0333

# Exhibit 4

Joint Confere... Committee – March 16, 2001
Present: T. Morgan, A. Smadbeck, E. Leone, J. MacArthur, B. Tsikitas, K. Burchill, T. Walsh, Dr. R. Monto
Excused: T. Sweet

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS/RECOMMENDATIONS | ACTION |
|---|---|---|---|
| 1.0 Review of Old Minutes | Approved | | None required. |
| 2.0 Old Business | • Still issues with the credentialing for Hughes/Kriedman – concerns – what exactly are they going to do for MVH. <br> • Competency of Dr. Hughes not being clinically active. <br> • Voices of other physicians regarding dissatisfaction of Hospital employee payment without interaction with physician. <br> • Dr. Hughes did have very positive recommendations from his references. <br> • Same issues keep coming up again and again. <br> • Dr. Kriedman – still significant concerns – another meeting Monday, 3/19, at 3:00pm. Would like a board member present. Will be outlining her requirements. <br> • By Law explanation -- what does substantial mean?  Requirement for her to be on Hospital Staff is to send patients to MVH. <br> • Question raised – Role of Cathy Chase in all this?  Separate issues and will not be discussed at the meeting mentioned above on Monday, 3/19.  Idea to have Dr. Kriedman unassigned, but on-call in the ER to consult on GYN cases. <br> • Discussion regarding the By-Laws. | | On-going |
| | REDACTED | | |

CONFIDENTIAL
MVH 1740



Joint Confere... ...committee – March 16, 2001
Present: T. Morgan, A. Smadbeck, E. Leone, J. MacArthur, B. Tsikitas, K. Burchill, T. Walsh, Dr. R. Monto
Excused: T. Sweet

CONFIDENTIAL
MVH 1741

# Exhibit 5

BUSINESS MINUTES

COMMITTEE: Medical Executive Committee

DATE: July 17, 2001

PAGE: 1

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| **1.0 CREDENTIALS:** | | REDACTED | | |
| **2.0 OLD BUSINESS** | | | | |
| 2.1 Ob/Gyn Coverage Issues | Distribution and review of letter from D.Hughes regarding his offer to cover J.Lew 25 weekdays, every other weekend, and half of the legal holidays.<br><br>Open discussion resulted in the following comments:<br>1.  Medical staff members feel that coverage is the fundamental essential relationship physicians have with each other at this small hospital. This includes coverage for the ER and unassigned patients, as well as taking care of each other's patients.<br>2.  Coverage is important in order to provide quality patient care, and collegial relationships amongst physicians.<br>3.  It is the responsibility of each physician to communicate concerns of standards of care to colleagues and to the Medical QI and MEC committees. | | | |

CONFIDENTIAL
MVH 0342

BUSINESS MINUTES

COMMITTEE: Medical Executive Committee

DATE: July 17, 2001

PAGE: 2

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| Ob/Gyn Coverage Issues, cont'd | 4. Concerns about the quality of a given physician's practice is ultimately the responsibility of the Medical QI and MEC committees.<br><br>Committee members go on record as stating that the MEC is bound to fulfill the obligations provided for in the Bylaws, the "purpose of which is to bring the professionals who practice at the Hospital together into a cohesive body to promote good patient care within a framework of self-government." Per the Bylaws citations in the June 26, 2001 MEC letter, among others, it is clear to this body that mutually shared Ob/Gyn coverage is required by Drs. Lew and Hughes. This is to be modeled in a manner similar to that extant at MVH in other primary need/core areas (medicine, surgery, pediatrics, anesthesia), and will generally require you to provide coverage for unscheduled/urgent/emergent care for all patients who present for such care, on a basis mutually agreed upon by the two physicians, and as approved by the MEC. There are currently several practice models at MVH that work well in specialties with | | | |

CONFIDENTIAL
MVH 0343

BUSINESS MINUTES

PAGE: 3

COMMITTEE: Medical Executive Committee

DATE: July 17, 2001

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| Ob/Gyn Coverage Issues, cont'd | two active, fully privileged physicians that might be used in developing a monthly shared on-call schedule. When applying for privileges, a physician agrees to a number of Bylaw obligations, including emergency service, rotational obligations, and other applicable standards to fulfill the Hospital's responsibilities to the MV community. This is the standard level of performance required of physicians at MVH practicing in the core specialties.<br><br>The following questions were raised:<br>1.  How does the MEC address the differences in standards of care between two physicians?<br>2.  How can equity be maintained between two physicians when one is supported by the Hospital and the other is not?<br>3.  What is the role of the Hospital administration in this situation?<br><br>K.Burchill stated that the Hospital's only role is to provide coverage for the ER and the unassigned patients presenting there. | | | |

CONFIDENTIAL
MVH 0344

BUSINESS MINUTES

PAGE: 4

COMMITTEE: Medical Executive Committee

DATE: July 17, 2001

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| Ob/Gyn Coverage Issues cont'd | Concerns raised by committee members regarding the issues raised by D. Hughes regarding the effectiveness of the QI process at MVH and the standard of care provided by J. Lew were discussed. Dr. Tsikitas provided a description of his letter to D. Hughes, which requests that he present the QI committee with six charts to be reviewed for quality of care concerns. B.Tsikitas continued to say that if a physician has concerns, his concerns should be addressed as quickly as possible and the issue resolved. J. Lew stated that he has quality concerns of his own with respect to D. Hughes' patient care. Finding that both physicians' charts should be reviewed in that case. | | | |
| | Agreement amongst committee members that it is in the best interest of the Hospital to resolve this issue as soon as possible; that the burden of explaining a problem is on the physician indicating a problem, and that in the mean time, the physicians should provide coverage for each other and this effort should be supported by the administration. | Recommendation to ask the two physicians to work out the call coverage schedule until the concerns regarding quality of care have been addressed and charts have been reviewed by the Medical QI Committee.<br><br>The coverage proposed by D.Hughes was found to be acceptable during the quality review process and the two physicians will be expected to work out coverage schedule details. | | |

CONFIDENTIAL
MVH 0345

COMMITTEE: Medical Executive Committee

BUSINESS MINUTES

DATE: July 17, 2001

PAGE: 5

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| Ob/Gyn Coverage Issues cont'd | | Motion: The MEC expects of our Medical Staff members that individuals in a multi-practitioner specialty cover each other. | Motion approved. Two physicians to present coverage schedule. | Pending. |
| | | Motion: Pending quality review of the practitioners in Ob/Gyn, the MEC will make a determination: Should the quality of both physicians be found to be appropriate, we will expect mutual coverage and eliminate Hospital-subsidized coverage, except when necessary. | Motion approved. J.Lew abstained. | Pending. |
| 3.0 NEW BUSINESS | | | | |

REDACTED

CONFIDENTIAL
MVH 0346

# Exhibit 6

BUSINESS MINUTES

PAGE: 1

COMMITTEE: Medical Executive Committee

DATE: June 26, 2001

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| 1.0 Dr. Lew's Concerns | REDACTED | | | |
| | Deurward Hughes, MD will be requested to cover Jason Lew, MD." | | | |
| | Explanation by Dr. Lew that the coverage issue has not been resolved due to Dr. Hughes' refusal based on "a difference in practice philosophy". | | | |

CONFIDENTIAL
MVH 0336

BUSINESS MINUTES

COMMITTEE: Medical Executive Committee

DATE: June 26, 2001

PAGE: 2

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| Dr. Lew's concerns, cont'd | REDACTED | | | |
| | The Hospital is not making a statement regarding Dr. Lew's quality of care, but has made the decision to support the development of the Midwifery program. | | | |

CONFIDENTIAL
MVH 0337

BUSINESS MINUTES

COMMITTEE: Medical Executive Committee

DATE: June 26, 2001

PAGE: 3

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| Dr. Lew's concerns, cont'd | Discussion regarding articles in the Bylaws and the Credentials Policy that apply to this situation. | Recommendation to request a meeting of the MEC with Dr. Hughes. Recommendation turned down. | | |
| | | Recommendation to send a letter to Dr. Hughes with a copy to the Board of Trustees and the CEO pursuant to Bylaws 5C. Letter is to request that Drs. Lew and Hughes resolve the coverage concerns based upon the Medical Staff Credentials Policy sections 2B2(q), 2D1(c), 2E1(c), and Medical Staff Bylaws section 3A3(b) and to request that Dr. Hughes equitably cover Dr Lew. Motion made to send letter as described above. | Motion approved.  Follow up at next meeting. | Ongoing. |

The meeting was adjourned.  The next meeting will be Tuesday, 07/10/01 at 12:30 PM.

CONFIDENTIAL
MVH 0338

# Exhibit 7



# OB/GYN COVERAGE MEETING
## April 27, 2001
## 12:30 PM

PRESENT:     Kevin R. Burchill, CEO
             Deurward Hughes, MD
             Jason Lew, MD
             Sharon Clauss-Zanger, RN, DCRM


At Sharon Clauss-Zanger's request, a meeting was held to discuss the plan for the OB/GYN coverage schedule, which will take effect 5/1/01.

Kevin Burchill opened the meeting with the Hospital's need to have ED and unassigned OB/GYN patients covered. Dr. Hughes and Dr. Lew agreed to assume this coverage responsibility on an every other week alternating basis.

The issue of a coverage plan for established patients of Cathy Chase, CNM, Dr. Hughes, and Dr. Lew was also discussed. Dr. Hughes, citing differing practice philosophies, stated he would agree to have Dr. Lew cover the midwifery practice for very short periods of time; but would arrange for his own coverage for more extended periods. Dr. Hughes offered to provide some coverage for Dr. Lew, if Dr. Lew would agree to pay him for this service. This issue remained unresolved.

Previously arranged coverage for Dr. Lew for June 15 through 17, 2001 was discussed. Due to the change in the coverage arrangement, effective 5/1/01, Dr. Lew was reminded that the Hospital would not be responsible for paying for this coverage, and Sharon Clauss-Zanger would be canceling the arrangement this afternoon.

Sharon Clauss-Zanger asked Dr. Hughes and Dr. Lew to meet with her to plan the ED and unassigned patient coverage schedule as soon as possible to meet the May 1st deadline.

Sharon Clauss-Zanger and Dr. Hughes were excused from the meeting at 1:10 PM by Kevin Burchill.


MINUTES WRITTEN BY: *Sharon Clauss-Zanger*
                    Sharon Clauss-Zanger, RN
                    Director of Clinical Resource Management

**CONFIDENTIAL**
**MVH 0130**

# Exhibit 8



---

## MEMORANDUM

---

**TO:**     KEVIN BURCHILL

**FROM:**   SHARON CLAUSS-ZANGER

**SUBJECT:** FOLLOW-UP TO MED QI MEETING AND DR. BUTTERICK'S E-MAIL

**DATE:**   08/02/01

**CC:**

---

YOU SHOULD KNOW THAT DR. HUGHES WILL BE GETTING A LETTER STATING HE WAS NEVER ASKED TO REVIEW RECORDS AND THAT HIS REVIEW OF RECORDS TO COMPILE A LIST FOR THE MED QI COMMITTEE'S REVIEW IS NOW A VIOLATION OF PATIENT CONFIDENTIALITY.

IN ADDITION, I WILL BE RECEIVING A LETTER FROM THE COMMITTEE, AS DIRECTOR OF MEDICAL RECORDS, STATING THAT THE DEPARTMENT SHOULD NOT HAVE PERMITTED DR. HUGHES TO REVIEW THE RECORDS TO COMPILE THIS LIST.

I WISH I UNDERSTOOD DR. BUTTERICK'S RATIONALE FOR HAVING THE MED QI COMMITTEE SCREEN THE RECORDS BEFORE SENDING THEM FOR OUTSIDE REVIEW. (I HAD TO RUN TO GET ON THE FERRY AND DID NOT SPEAK WITH HIM ABOUT THIS.) I SPECIFICALLY MET WITH TSIKITAS AND MAC ARTHUR AFTER THE PREVIOUS MED QI MEETING WHEN THIS WAS PROPOSED AND HAD THEM CONVINCED THAT THE ONLY OBJECTIVE WAY TO PROCEED WAS TO SEND ALL OF THE RECORDS OUT FOR REVIEW. ANY SELECTION PROCESS BY THE MED QI COMMITTEE BEFORE OUTSIDE REVIEW IS GOING TO BE QUESTIONED BY THE PRACTITIONERS INVOLVED. I WAS HOPING TO AVOID THAT CONTROVERSY. DRS. TSIKITAS, MAC ARTHUR AND HIRSHBERG WERE IN FAVOR OF MY ALTERNATIVE PLAN.

DR. BUTTERICK HAS A SOFTWARE PROGRAM THAT CAN PROVIDE COMPLICATION PROFILES BY PHYSICIAN. THIS IS A VALUABLE TOOL. HOWEVER, THE QUESTIONS DR. HUGHES HAS ABOUT DR. LEW'S PRACTICE ARE ABOUT MANY ISSUES, NOT JUST COMPLICATION RATES. ONE VERY IMPORTANT AREA THAT AN OUTSIDE REVIEW COULD SETTLE WOULD BE THE MEDICAL INDICATIONS AND APPROPRIATENESS OF SURGICAL PROCEDURES. THE MED QI COMMITTEE IS NOT CAPABLE OF RENDERING THAT OPINION OR SCREENING CHARTS FOR THAT PURPOSE. WE NEED AN OUTSIDE REVIEW BY A BOARD CERTIFIED OB/GYN TO RESOLVE THAT ISSUE.

CONFIDENTIAL
MVH 1579

thx for your help...go fishing!!

see ya Friday...

James Butterick MD wrote:

Good meeting last night or at least I thought so. I can explain more in person. I will be there on Friday. I suggested an approach that I have used at one of our sites and the committee liked that. The QI committee docs will do the first pass of reviews on the last six months of all Ob/gyn records. It totals about 100. I can get a review done by a qualified physician of the problematic cases.

Dr. Hughes wrote a letter which Bill will respond to. There is confusion as to what Dr. Hughes was asked to do. The committee said 'select' the charts and we will review them. Dr. H 'reviewed' the charts and the committee felt he did more than he should of, especially appreciating that he looked at medical records of patients that may not have been currently his or Cathy's patients. There was some comment about making sure that medical records and all physicians were careful about who had access to records and for what reason.

I am not sure where Sharon is on this. She wasn't real happy to my eye. There are a couple of other collateral issues I can go over in person. This can be resolved with a little time and money. Getting the two OB's to accept it will be harder. All the committee members were in agreement on this approach, however.

CONFIDENTIAL
MVH 1580

8/1/01 11:20 AM

# Exhibit 9



August 3, 2001

Dear Bill,

It was a pleasure for me to meet with the Martha's Vineyard Hospital Medical QI Committee earlier this week. The issue before the committee needs prompt resolution so that the quality of the service in question can be assured and so the quality oversight process itself may continue to be trusted and respected by everyone in the hospital up to and including the Board of Trustees. My understanding of the action plan that came from the meeting was that the QI Committee members were going to personally take on the responsibility for reviewing approximately 100 medical records covering the obstetrical and gynecologic activities of the two current providers at the hospital over the last six months. If this review discloses any questionable individual performance, including any pattern or trend, these records will be sent out for independent specialty-specific review. I can arrange the latter if you would like me to.

I am enclosing four pieces of paper with this letter that I think can provide the framework for the performance review of the Martha's Vineyard Hospital obstetrical and gynecologic practices that the Medical QI Committee intends to undertake. Let me briefly explain them.

The first two go together. Please keep in mind that with our volume of cases, we have nurse reviewers that do much of the screening of our problematic cases before they go to chiefs of service, medical staff departments, or to me. That being the case, they have an extensive list of complications that they pore through to try and sift out those that are worthy of more intensive review. The complications that they review also come from our computerized medical record and billing system. Our first pass can come from computer printouts and I believe the Vineyard hospital has something akin to this.

The first sheet is the entire spectrum of complications that we review for obstetrics and gynecology. My primary outcomes manager for obstetrics did a summary of these complications and tried to distill out what she thought were the most important and easily identifiable. That's the second sheet. I know there are still a pretty large number of different complications on this page, but I think once the committee gets into this, they will find this framework or template pretty easy to use. It's what I use when I personally am reviewing charts.

The third sheet is intended to be a summary of each chart's review. There is space for comments by the reviewer and then most importantly a place to judge two things---the significance of the outcome of the case and the performance of the practitioner. Some of the other peripheral boxes and spaces, like check-offs for reports to the DPH or BoRM are not as germane to this review, but the box about the potential need for a CME lecture might be useful for topics of a very general nature from this specialty. Or for focusing on individual practitioner needs if a pattern or trend emerges.

The last document is a simple list of other kinds of indicators that can be looked for. Many of these are from our set of indicators known as the Maryland Quality Indicators and we collect many of these on a routine basis. I think that the Vineyard hospital also collects many of them and so we could cross-reference those for these OB/gyn cases if we wished to. I can check with Sharon about that.

We discussed getting information from office records as to outcomes. That is nearly impossible and I do not ever have that luxury, no matter how appealing it seems. The indicator lists also do not ask questions about adequacy of documentation—indications for procedures or work-ups, for example. I assume that the members of the committee would want to do that as they review the records and any comments about

CONFIDENTIAL
MVH 1577

inadequacies could be included on this review sheets. Once all the reviews are done, I am assuming that the committee will wish to meet and go over those cases that they feel deserve further review.

In case they are needed, I have also identified two Board-certified obstetrician-gynecologists that will do this review for the hospital. I will talk to Kevin about how that will get paid for. The QI Committee has a lot of serious and time-consuming work to do with this review. Administration needs to figure out how to pay for it.

This will be a lot of work, but I think these documents will prove very helpful in sorting out those cases where everything went just fine and then those where problems arose. With a low threshold for seeking outside review, I have no doubt that your committee members can accomplish this honestly and deftly. I do think this is important so that the committee will have full knowledge of all of these cases as well as complete and total confidence in the quality oversight process of the hospital.

Lastly, let me point out that this kind of review, even for us in Southcoast at our size, is not a frequent occurrence. At all three of our hospitals, I do not have this kind of review going on more than once every year or two. I think that a successful review of this type can, however, restore the confidence of the medical staff as to their role and responsibility to do the quality oversight and provide evidence that you are serious about this. Once the review by the committee is done, the rest of the medical staff must respect the findings even if they do not agree with every conclusion. That is part of the responsibility that goes along with medical staff membership.

I look forward to working with the committee on this. If you have questions about these documents, please feel free to call, write, or email me. As I mentioned, I will be on island from August 20 to the 25 and can be available to assist the committee if you feel this is desirable. Please feel free to call me with any questions

Sincerely,

James D. Butterick, MD, MMM
Chief Medical Officer


C:      John MacArthur, MD
        Kathleen Koehler, MD
        Peter Laursen, MD
        Alan Hirshberg, MD
        Steve London, MD
        Sharon Clauss-Zanger, RN
        Kevin Burchill, JD

CONFIDENTIAL
MVH 1578

# Exhibit 10

COMMITTEE: Medical Executive Committee

BUSINESS MINUTES

DATE: August 14, 2001

PAGE: 2

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---------|---------------------|----------------------------|------------------|--------|
| 3.0 NEW BUSINESS | | | | |
| | REDACTED | | | |
| 3.2 Joint Conference Committee Update/Requests | Any physician who has an issue is encouraged to bring it to the JCC for discussion. A JCC meeting will take place this Friday. Drs. Kriedman and Hughes have asked to be included on the agenda. Question raised regarding the ability of non-committee members to attend JCC meetings. | Recommendation to place question on the JCC agenda. | Follow up with JCC. | Pending. |

CONFIDENTIAL
MVH 0347

BUSINESS MINUTES

COMMITTEE: Medical Executive Committee

DATE: August 14, 2001

PAGE: 3

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| | REDACTED | | | |
| 3.6  Additional New Business: | 1.  J.Lew: Ob/Gyn Coverage issues/MVH Colposcopy Press Release: brief discussion regarding Dr. Lew's dissatisfaction with the current MV Times press release (attached). | 1.  Recommendation of MEC members that J.Lew brnng his issues to the JCC for further discussion and resolution. Discussion of press release to be added to 08/28/01 MSC agenda. Coverage issues to be resolved directly between Drs. Lew and Hughes and plan to be forwarded to the Medical Staff Office. | 1.  None at this time. | 1.  Resolved. |
| | 2.  Medical Q.I. Committee Update: the committee recommends a voluntary quality of care review performed by ACOG, which is a 4 day comprehensive review of the entire Ob/Gyn program (physicians, midwife, and OB nurses). This review is available to all hospitals and assesses the quality of care in the existing program. Recommendations for improvement are made. | 2.  MEC members supported the proposed ACOG review and agreed that it will strengthen the program. Members expect that the results of the review will serve as a final recommendation to settle the Ob/Gyn coverage issue. | 2.  MEC recommendation to CEO for approval. | 2.  Pending. |

The meeting was adjourned.  The next meeting will be Tuesday, September 11, 2001 at 6:00pm.

CONFIDENTIAL
MVH 0348

# Exhibit 11

BUSINESS MINUTES    Date    Page

**Meeting**
**Of the**
**Board of Trustees**
**For**
**Martha's Vineyard Hospital**

**August 24, 2001**

**9:30am**

Present:    Ted Morgan – Chairman; Kevin Burchill, John Ferguson, Daniel Kaplan, John MacArthur, M.D., Earle Ray, Arthur Smadbeck, Tim Sweet, Justin Wyner, Kathleen Koehler, M.D, Charles Harff, Greg Culley, M.D., Joe Carter, and Louis Sullivan

Also Present:  Tim Walsh, CFO

Guests:    Stephen Miller, M.D. and Peggy Ekholm, Radiology Department, MVH

# REDACTED

**CONFIDENTIAL**
**MVH 0315**

There was a question raised to Dr. MacArthur with regard to the quality issues in regard to OB/GYN. The response and discussion regarding these quality issues, suggested that both doctors are qualified, but practice differently. The American College of Obstetrics and Gynecology (ACOG) will visit MVH in October to review both practices and present a report to MVH.

REDACTED

CONFIDENTIAL
MVH 0316

# Exhibit 12

## INTEROFFICE MEMORANDUM

TO:         DRS HUGHES AND LEW

FROM:       NATASHA HARTMANN, MEDICAL STAFF COORDINATOR

SUBJECT:    OB/GYN COVERAGE SCHEDULE

DATE:       OCTOBER 23, 2001

CC:         SHARON CLAUSS-ZANGER, JOHN MACARTHUR, KEVIN BURCHILL

At the September 25, 2001 Medical Staff Committee meeting it was proposed by Dr. Lew that, in place of Kevin Burchill as previously proposed, I meet with you to assist in the development of an Ob/Gyn coverage schedule.

As an employee of Martha's Vineyard Hospital, I report to Sharon Clauss-Zanger and to Kevin Burchill. Since any decision I would make ultimately requires Mr. Burchill's approval, I believe that it would be more appropriate to explain your concerns directly to him, or to her.

As you know, the discussions with respect to Ob/Gyn coverage have not been resolved at the Medical Executive Committee or the Medical Staff Committee level, and never having received any mediation training, I do not believe that I would be qualified to help you in reaching a compromise.

Although I would welcome the opportunity to be of assistance in resolving this ongoing issue, I am not comfortable that I would be able to do so.

**CONFIDENTIAL**
**MVH 0213**

# Exhibit 13

BUSINESS MINUTES

COMMITTEE: Medical Executive Committee

DATE: February 12, 2002

PAGE: 1

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---------|---------------------|------------------------------|-------------------|--------|
| **1.0  MINUTES** | | | | |
| 1.1 Minutes of 01/08/02. | Minutes were reviewed. Motion to approve minutes as written. Motion seconded. | Motion approved. | Approved. | Resolved. |
| **2.0  CREDENTIALS:** Deurward Hughes, MD Obstetrics/Gynecology Reappointment – Active Staff | Credentials reviewed. Discussion regarding applicant's cooperation with other physicians, citizenship issues, and physician's willingness to participate in coverage. Report that no quality issues were identified in the ACOG report. Motion to recommend reappointment to the Medical Staff Committee. Motion seconded. | Motion approved. Jason Lew, MD abstained. | To Medical Staff Committee. | Resolved. |

REDACTED

CONFIDENTIAL
MVH 0351

BUSINESS MINUTES

COMMITTEE: Medical Executive Committee

DATE: February 12, 2002                                                                PAGE: 3

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| 3.2 Outpatient Follow Up | Discussion regarding the difficulties faced with follow up care for unassigned patients. | Recommendation to forward issue to VMG. | To VMG for discussion. | Resolved. |
| 3.3 Change Meeting Date | Not discussed. | None at this time. | None required. | Pending. |
| 3.4 Additional New Business: | | REDACTED | | |
| | | 2. MEC members to review ACOG report. Special meeting to be scheduled with Dr. Butterick. Request for a recommendation from the MQI committee. | 2. B.Tsiktas, MD to follow up with MQI (next meeting is 02/13/02). J.MacArthur, MD to follow up with Dr. Butterick. | |
| | 2. Letter from Chief of Staff distributed. | | | |
| 4.0 OLD BUSINESS | | | | |
| 4.1 Bylaws Revision | Not discussed. | None at this time. | None required. | Ongoing. |
| 4.2 Additional Old Busines: | | | | |

The meeting was adjourned.  The next meeting will be Tuesday, 03/12/02 at 5:30pm.

CONFIDENTIAL
MVH 0352

BUSINESS MINUTES

COMMITTEE: Medical Executive Committee

DATE: March 12, 2002

PAGE: 4

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| 3.4 Review of Meeting with Board of Trustees (BOT) Executive Committee | Report that the BOT is anxious to meet with the medical staff. Dr. J.Butterick and J.Ferguson were approved as the facilitators. A meeting time will be arranged and an agenda will be prepared. Agreement that the meeting with the BOT Exec. Committee was positive and a good start for better communication between the medical staff, administration, and the BOT. | Recommendation for medical staff to meet with the moderators prior to the next meeting with the BOT. | Chief of Staff to follow up. | Ongoing. |
| 4.2 Additional Old Business | ACOG report update: Question whether Dr. Shah is still willing to provide oversight of Practitioner A. Report that Dr. Cetrulo is willing to provide oversight. | Conclusion that oversight issue needs to be resolved as quickly as possible. | Chief of Staff to follow up. | Ongoing. |

REDACTED

The meeting was adjourned.  The next meeting will be Tuesday, 04/09/02 at 5:30pm.

CONFIDENTIAL
MVH 0353

# Exhibit 14

# MEMORANDUM

**To:**        Deurward L. Hughes, M.D.

**From:**    Kevin R. Burchill

**Date:**      March 26, 2002

**Subject:**   **COVERING PHYSICIAN OBLIGATION**

At a meeting in my office with Sharon, I advised you that on the advice of our Chief of Staff and Chief Medical Officer (in consultation with our hospital attorney and Vice-Chair of the Board), you are to continue as the covering OB/GYN physician as previously arranged until the end of the business week.

Dr. Lew is currently on vacation and unavailable. You have been told that both Dr. MacArthur and Dr. Butterick indicated to Sharon, Ellen, and I (in a telecon of Atty. Kane and Mr. Sweet) that you are not to entertain a renewal of the previous voluntary supervision.

You were also advised via a brief separate telecons with Atty. Kane and Dr. MacArthur and Dr. Butterick.

Dr. MacArthur has advised Dr. Lew of the need to "sign out" to you as the covering physician for his planned vacation.

Thank you.

KRB/amh
cc:    Sharon Clauss-Zanger
        Director, Clinical Resource Management

0070

# Exhibit 15

Joint Conference Committee
Friday April 26, 2002
9:30am
Southside Conference Room

The meeting began at 9:31am in the Southside Conference Room.  Those present were: Dr.
Monto, Chairman, Dr. Tsikitas, Art Smadbeck, Tim Sweet, Sharon Clauss-Zanger, Ellen Leone,
and Tim Walsh.

Special Guest: Dr. Hoak

### Minutes

The minutes were approved as previously distributed.

### Old Business

The group discussed the issues between the Midwifery office and Dr. Lew's office.  It was noted
that the Medical Staff would like to see an integrated plan for the future at Martha's Vineyard
Hospital.  Also noted was the need for better communication between the practices.  In order to
move forward the Hospital should try to blend the 3 together (Dr. Hughes/Midwife/Dr. Lew).
One person to help accomplish this might be Dr. Butterick.

REDACTED

Respectfully submitted,

*Alleyne Hughes*

Alleyne Hughes
Executive Assistant
/amh

CONFIDENTIAL
MVH 1747

# Exhibit 16

## INTEROFFICE MEMORANDUM

TO:        TIM WALSH, CEO

FROM:      SHARON CLAUSS-ZANGER, DCRM

SUBJECT:   OB/GYN COVERAGE UPDATE

DATE:      8/21/2002

CC:        FILE

REDACTED

Dr. Hughes informed everyone that he would cover Dr. Lew whenever his schedule permitted. However, he wanted it to be known that he had worked every holiday in 2001 and year-to-date 2002. He wanted this to be considered when coverage is discussed with Dr. Lew.

This morning, I met with Dr. Hughes to review Dr. Lew's requests for coverage. Attached, please find the outcome of my efforts to cover Dr. Lew's requests.

As you can see, I need to discuss this with you at our Monday meeting.

**MVH 0145**



## OB/GYN COVERAGE

| DR. LEW'S REQUESTS | DR. HUGHES' REQUESTS | COVERAGE |
|---|---|---|
| 8/30 – 9/1/02 | None | Dr. Hughes does not feel he should cover another holiday. He also objects to the fact that this would mean that Dr. Lew would have 3 weekends off from covering the ED and unassigned patients. (8/17 – 8/18 Dr. Berwald on) (8/24 – 8/25 Dr. Hughes on) |
| 9/13 – 9/15/02 | 9/13 – 9/15/02 | ?? Outside coverage. |
| None | 9/19 – 9/23 | Dr. Gottlieb covering. |
| 9/27 – 9/29 | None | Dr. Hughes to cover |
| 10/11 – 10/13 | 10/11 – 10/20 | ??Outside coverage. |
| 10/25 – 10/26 | None | Dr. Hughes needs to check on this |
| 11/8 – 11/10 | 11/8 – 11/10 | ??Outside coverage. |
| 11/22 - 11/24 | None | Dr. Hughes to check on this |
| 11/26 – 12/1 | 11/26 – 12/1 | ??Outside coverage |
| 12/13 – 12/15 | 12/10 – 12/16 | ??Outside coverage. |
| 12/19 – 1/2 | None | Dr. Hughes has concerns about equitable coverage for holidays. |

**MVH 0146**

# Exhibit 17

## INTEROFFICE MEMORANDUM

TO:        TIM WALSH, CEO

FROM:      SHARON CLAUSS-ZANGER, DCRM

SUBJECT:   LABOR DAY WEEKEND OB/GYN COVERAGE

DATE:      8/22/2002

CC:        FILE

Dr. Hughes has agreed to cover Dr. Lew's request for 8/30 – 9/1/02.

I am providing you with this update in preparation for your 12 Noon meeting with Dr. Hughes on 8/26/02.

SCZ:dtr

**MVH 0147**



OB/GYN COVERAGE

| DR. LEW'S REQUESTS | DR. HUGHES' REQUESTS | COVERAGE |
|---|---|---|
| 8/30 – 9/1/02 | None | Dr. Hughes will cover 8/30 – 9/1/02 |
| 9/13 – 9/15/02 | 9/13 – 9/15/02 | ~~Dr. Hughes covering~~ *Dr Druga Covering)* |
| None | 9/19 – 9/23 | Dr. Gottlieb covering |
| 9/27 – 9/29 | None | Dr. Hughes to cover. |
| 10/11 – 10/13 | 10/11 – 10/20 | ??Outside coverage. |
| 10/25 – 10/26 | None | Dr. Hughes needs to check on this |
| 11/8 – 11/10 | 11/8 – 11/10 | ??Outside coverage |
| 11/22 - 11/24 | None | Dr. Hughes to check on this |
| 11/26 – 12/1 | 11/26 – 12/1 | ??Outside coverage. |
| 12/13 – 12/15 | 12/10 – 12/16 | ??Outside coverage |
| 12/19 – 1/2 | None | Dr. Hughes has concerns about equitable coverage for holidays. |

MVH 0148

# Exhibit 18



# MEMO

**To:**      Jason Lew, MD
**From:**    ✓Sharon Clauss-Zanger
**Subject:** Coverage/Labor Day
**Date:**    August 22, 2002

**CC:**      Timothy Walsh, CEO


Per our telephone conversation earlier today, the following changes to the coverage schedule will be made:

1.  You will cover the Emergency Department and Unassigned Patients 8/23 - 8/29

2.  Dr. Hughes will cover the Emergency Department and Unassigned Patients 8/30 - 9/5

3.  Dr. Hughes will cover your established patients 8/30 - 9/2.

If you have any questions, please contact me at any time.


SCZ/aha

**MVH 0149**

# Exhibit 19



M A R T H A ' S
HOSPITAL
V I N E Y A R D

**To:**      Dr. Hughes and Dr. Lew

**MEMORANDUM**

**From:**    Holly Austin, Medical Staff Office



**Subject:** Coverage

**Date:**    August 26, 2002

Please be advised that Dr. Donald Druga has kindly offered to cover both of your practices from Friday, September 13, 2002 at 12:00 noon through Sunday, September 15, 2002 at 6:00 pm. If you have any questions, please do not hesitate to give me a call

**MVH 0150**

# Exhibit 20

BUSINESS MINUTES

COMMITTEE: Medical Executive Committee

DATE: September 10, 2002

PAGE: 2

| SUBJECT | FINDINGS/DISCUSSION | CONCLUSIONS RECOMMENDATIONS | ACTION FOLLOW-UP | STATUS |
|---|---|---|---|---|
| 3.0 OLD BUSINESS CONT. 3.2 OB/Gyn Update by Bill Tsikta, MD | Dr. Tsiktas said that the Medical Quality Improvement Committee meeting with Dr. Shah on conference call went very well. Dr. Tsiktas read letter received from Dr. Shah. | | 1) Motion seconded and approved. Letter to be drafted by Dr. Hoak. | Pending. |
| | | Practitioner "A" and "B" will be asked to draft an OB/Gyn coverage schedule effective October 1, 2002. | | |
| | Mr. Walsh clarified the hospital's position on OB/Gyn coverage. The nurse midwife and Dr. Knedman are not to take first call. | 2) Mr. Sweet made a motion to have the draft letter reviewed by attorney John Kane of Ropes and Gray before it is finalized and distributed. | 2) Motion seconded and approved. | Pending. |
| | | 3) Motion to have ACOG return to conduct a Voluntary Review of Quality of Care in 6 months (approx. 4/1/03) | 3) Motion seconded and approved. | Pending. |
| | ...and MVH Medical Staff. | | | |
| | ...OB/Gyn position...no...needed. | | | |

REDACTED

CONFIDENTIAL
MVH 0357

# Exhibit 21

*none of This*
*done by Oct 1*

*not done at all*
*as of Oct 10*



MARTHA'S
**HOSPITAL**
VINEYARD

**MEMORANDUM**

... ghes, MD
...-Zanger,
... Coverage Schedule 10/01/02-01/31/03
... , 2002

I have received your voice mails and have forwarded
your issues to Bill Tsikitas, MD and Tim Walsh, CEO.

Dr. Tsikitas will contact you to discuss Dr. Shah's letter
and report your meeting with Dr. Shah and a letter from
the Medical Quality Improvement Committee. He
assures me that these requests will be fulfilled before
October 1, 2002. As far as Dr. Lew's coverable vacation
time, this will be decided at a later date and you will be
informed of that time.

In the interim, please move forward with drafting an
OB/Gyn coverage schedule with Dr. Lew for the period
of October 1, 2002 through January 31, 2003 and submit
the draft to me before September 20, 2002.

The requests for coverage for the time period following
September 30, 2002 cannot be honored until I have the
draft schedule to present to Mr Walsh

Thank you for your assistance.

0048

# Exhibit 22

FILE COPY

MARTHA'S

**MHV HOSPITAL**

VINEYARD

## MEMORANDUM

**TO:**     TIM WALSH

**FROM:**   SHARON CLAUSS-ZANGER

**SUBJECT:** DRAFT OB/GYN SCHEDULE 10/1/02 THROUGH 02/02/02

**DATE:**   09/20/02

In response to the fax I received from Dr. Hughes' attorney, I am forwarding a copy of the draft coverage schedule agreed to by both physicians.

This should satisfy the request cited on page 2, item 4 of that document

If you have any questions, I will return to work on September 30, 2002.

**CONFIDENTIAL**
**MVH 0152**

# October

**2002**

**2002**

OB/gyn coverage

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3<br>12:00 noon - Hughes | 4<br>Hughes | 5 |
| 6<br>Hughes till 6:00pm | 7 | 8 | 9<br>12:00 noon Lew | 10<br>Lew | 11<br>Lew | 12 |
| 13<br>Lew | 14<br>Lew | 15<br>Lew until 6:00 pm | 16 | 17<br>12:00noon Hughes | 18<br>Hughes | 19 |
| 20<br>Hughes until 6:00 pm | 21 | 22 | 23 | 24<br>Hughes & Lew | 25<br>Hughes & Lew | 26 |
| 27<br>Hughes & Lew | 28 | 29 | 30 | 31 | | |

CONFIDENTIAL
MVH 0153

# December

**2002**

OB/Gyn Coverage

*~ Master folder*

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
| 1 Lew until 6:00 pm | 2 | 3 | 4 | 5 | 6 12:00 noon Hughes | 7 Hughes |
| 8 Hughes until 6:00 pm | 9 4:00 pm Lew | 10 Lew | 11 Lew | 12 Lew | 13 Lew | 14 Lew |
| 15 Lew until 12:00 noon | 16 | 17 | 18 | 19 12:00 Hughes | 20 Hughes | 21 Hughes |
| 22 Hughes until 6:00 pm | 23 6:00 pm Hughes | 24 Hughes | 25 Hughes | 26 Hughes | 27 Hughes | 28 Hughes |
| 29 Hughes until 6:00 pm | 30 | 31 COVERAGE NOT YET DETERMINED | | | | |

**Would Hospital cover New Years. Dr. Lew wants school vacation week to graduate 12/30 – 1/5/02.

CONFIDENTIAL
MVH 0154

# January

## OB/Gyn Coverage

**2003**

| | SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|---|
| | | | | 1 coverage not determined | | 2 COVERAGE NOT YET DETERMINED | 3 COVERAGE NOT YET DETERMINED |
| | 5 coverage not determined | 6 | 7 | 8 | | 9 12:00 Noon Lew | 10 Lew |
| | Lew0 | 12 Lew | 13 Lew | 14 Lew | 15 Lew | 16 ** ?|200 noon (Lew) | 17 |
| | 19 ** ? Till 6:00 pm (Lew) | 20 Lew (Lew) | 21 Lew | 22 Lew | 23 Lew | 18 ** (Lew) |
| | Lew | 26 Lew | 27 Lew | 28 Lew | 29 Lew | 30 Lew | 25 |
| | Lew | | | | | 31 February 1, 2003 - Lew February 2, 2003 - Lew until 6:00 pm | 24 Lew |

** Would Hospital provide coverage

**CONFIDENTIAL**
**MVH 0155**

# ENGEL & SCHULTZ, P.C.

### Attorneys at Law

125 High Street, Suite 2601
Boston, MA 02110-2704
Phone: (617) 951-9980
Facsimile: (617) 951-0048

## FACSIMILE COVER SHEET

DATE:     September 18, 2002

TO:     Ms. Sharon Claus-Zanger

FAX NO.:     (508) 693-3956

FROM:     Mark D. Engel, Esquire

RE:     *Dr. Deurward L. Hughes*

MESSAGE:

NUMBER OF PAGES (including cover sheet):     4

HIGH PRIORITY -- DELIVER ASAP     (X)

CONFIDENTIAL -- ADDRESSEE ONLY     (X)

*CONFIDENTIALITY NOTE:*

*The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this fax is strictly prohibited. If you have received this fax in error, please immediately notify the Sender at (617) 951-9980 and destroy the original message.*

**CONFIDENTIAL**
**MVH 0156**

# ENGEL & SCHULTZ, P.C.

### Attorneys at Law

125 High Street, Suite 2601
Boston, MA 02110-2704

Mark D. Engel
Email: mdengel@engelschultz.com

Phone: (617) 951-9980
Facsimile: (617) 951-0048

September 18, 2002

<u>VIA FACSIMILE (508) 696-0437 and</u>
<u>AIRBORNE EXPRESS</u>

Mr. Timothy Walsh
Chief Executive Officer
Martha's Vineyard Hospital
P.O. Box 1477
Oak Bluffs, MA 02557

*Re:*    ***Dr. Deurward L. Hughes***

Dear Mr. Walsh:

This office represents the above-referenced Deurward L. Hughes, M.D. regarding his employment by MVII Physicians, Inc. generally and, specifically, his efforts to accommodate Martha's Vineyard Hospital (the "Hospital") by providing expanded OB/GYN coverage.

I have reviewed Dr. Hughes' employment contract dated April 1, 2001 (the "Contract") and, in order to put the present coverage issues in context, it is important to note the following contractual provisions:

1      Dr. Hughes is granted the control over the means, manner and method by which he provides services to his patients.

2.     Dr. Hughes' obligation to provide coverage to Dr. Lew expired as of May 1, 2001.

3.     Dr. Hughes is <u>entitled</u> to coverage from off-island physicians.

4.     Dr. Hughes is entitled to six (6) weeks of vacation per year which may be utilized in the year following their accumulation. He currently has accumulated 30 vacation days from the first contract year. In addition, Dr. Hughes has accumulated 18 CME days (8 from year 1, 10 from year 2) and is entitled to coverage for an additional 52 days for weekends per year.

**CONFIDENTIAL**
**MVH 0157**

ENGEL & SCHULTZ, P.C.

Mr. Timothy Walsh
September 18, 2002
Page 2

Notwithstanding the preceding contractual rights, Dr. Hughes recognizes the cost of such "off-island" coverage and is willing to cooperate with the Hospital in an effort to reduce said costs. The Hospital has requested that Dr. Hughes enter into a cross-coverage arrangement with Dr. Lew. As he has indicated to you previously, Dr. Hughes is willing to attempt to accommodate the Hospital's efforts, but feels it is crucial that the basis upon which he enters into such an arrangement be clear and unambiguous.

Accordingly, please be advised that Dr. Hughes would be willing to enter into a cross-coverage arrangement with Dr. Lew upon the following terms and conditions:

1.     The arrangement would be for a four (4) month period only to cover the period of October 1, 2002 through January 31, 2003 (the "Trial Period")

2.     Dr. Hughes could terminate the arrangement upon thirty (30) days written notice to the Hospital.

3.     The Hospital shall provide coverage for Dr. Hughes, whether by Dr. Lew or, if necessary, by "off-island" physicians for all of the time off, whether for vacation or for CME, to which Dr. Hughes is contractually entitled, as specified in ¶4 on page one of this letter.

4.     The Hospital shall forthwith notify Dr. Hughes, through his counsel, of the number of days that Dr. Hughes is expected to cover for Dr. Lew during the Trial Period and shall specify what, if any, major holidays for which coverage is being requested.

5.     A determination of dates for cross-coverage is to be mutually agreed upon. In the event that there is a disagreement, the Hospital administration shall participate in resolving such disagreement.

6.     During the periods that Dr. Lew is covering for Dr. Hughes, he shall also provide coverage for Dr. Terry Kriedman.

Please note that the above-described proposal is put forth strictly as an accommodation to the Hospital and is intended merely as a trial. Dr. Hughes does not waive any right granted to him under the Contract, either by this proposal nor by his participation in the trial cross-coverage contemplated thereby.

CONFIDENTIAL
MVH 0158

ENGEL & SCHULTZ, P.C.

Mr. Timothy Walsh
September 18, 2002
Page 3

I trust you will find the above-described proposal fair and reasonable and put forth in the spirit of cooperation intended by Dr. Hughes. Kindly contact me at your earliest convenience to arrange for a memorialization of the proposal.

Very truly yours,

Mark D. Engel

MDE/sb

cc:    Dr. Deurward L. Hughes
       Ms. Sharon Claus-Zanger (via facsimile (508) 693-3956)

CONFIDENTIAL
MVH 0159

# Exhibit 23



# ACKNOWLEDGMENT
## OB/GYN COVERAGE
### SCHEDULE 10/01/02 THROUGH 02/02/03

I, Deurward Hughes, MD, have reviewed the attached coverage schedule for the period of 10/01/02 through 02/02/03.

_____At this time I am in agreement with this schedule.

_____I am not in agreement with this schedule.


_____
(Signature)


_____
(Date)

# *October* 2002 — 2002

## OB/gyn coverage

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
| | | **1** | **2** | **3** 12:00 noon - Hughes | **4** Hughes | **5** |
| **6** Hughes till 6:30pm | **7** | **8** | **9** Lew | **10** Lew | **11** Lew | **12** |
| **13** Lew | **14** | **15** Lew until 6:00 pm | **16** | **17** 12:00 noon Hughes | **18** Hughes | **19** |
| **20** Hughes till 6:00 pm | **21** | **22** | **23** | **24** Hughes & Lew | **25** Hughes & Lew | **26** |
| **27** Hughes & Lew | **28** | **29** | **30** | **31** | | |

# November
## OB/gyn Coverage

**2002**

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
| | | | | | 1 12:00 noon Hughes | 2 Hughes |
| 3 Hughes until 6:00 pm | 4 | 5 | 6 | 7 Hughes & Low | 8 Hughes & Low | 9 |
| 10 Hughes & Low | 11 | 12 | 13 | 14 12:00 noon Hughes | 15 Hughes | 16 |
| 17 Hughes until 6:00 pm | 18 | 19 | 20 | 21 Hughes & Low | 22 Hughes & Low | 23 |
| 24 Hughes & Low | 25 6:00 pm Low | 26 Low | 27 Low | 28 Low | 29 Low | 30 |

**2002**

0074

# December
## OB/Gyn Coverage

**2002**

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
| 1 Lew until 6:00 pm | 2 | 3 | 4 | 5 12:00 noon Hughes | 6 Hughes | 7 |
| 8 Hughes until 6:00 pm | 9 | 10 4:00 pm Lew | 11 Lew | 12 Lew | 13 Lew | 14 |
| 15 Lew | 16 Lew until 12:00 noon | 17 | 18 | 19 12:00 Hughes | 20 Hughes | 21 |
| 22 Hughes until 6:00 pm | 23 | 24 6:00 pm Hughes | 25 Hughes | 26 Hughes | 27 Hughes | 28 |
| 29 Hughes until 6:00 pm | 30 | 31 COVERAGE NOT YET DETERMINED | | | | |

**2002**

0075

# January

OB/Gyn Coverage

**2003**

| SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 COVERAGE NOT YET DETERMINED | 4 COVERAGE NOT YET DETERMINED |
| 5 Lew | 6 | 7 | 8 | 9 12:00 Noon Lew | 10 Lew | 11 |
| 12 Lew | 13 Lew | 14 Lew | 15 Lew | 16 Lew | 17 Lew | 18 |
| 19 Lew | 20 Lew | 21 Lew | 22 Lew | 23 Lew | 24 Lew | 25 |
| 26 Lew | 27 Lew | 28 Lew | 29 Lew | 30 Lew | 31 February 1, 2003 - Lew February 2, 2003 - Lew until 6:00 pm | |

**2003**

# Exhibit 24

# ENGEL & SCHULTZ, P.C.

### Attorneys at Law

125 High Street, Suite 2601
Boston, MA 02110-2704

Mark D. Engel
Email: mdengel@engelschultz.com

Phone: (617) 951-9980
Facsimile: (617) 951-0048

October 3, 2002

**VIA FACSIMILE (508) 696-0437 and**
**FIRST CLASS MAIL**

Mr. Timothy Walsh
Chief Executive Officer
Martha's Vineyard Hospital
P.O. Box 1477
Oak Bluffs, MA 02557

*Re:*     *Dr. Deurward L. Hughes*

Dear Mr. Walsh:

I wrote to you on September 18, 2002 putting forth a proposal whereby Dr. Hughes would be willing to enter into a cross-coverage arrangement with Dr. Jason Lew, notwithstanding the rights conferred upon him by his employment contract. Dr. Hughes impressed upon me the time sensitivity of doing so in that the contemplated cross-coverage arrangement was to begin on October 1, 2002. To date, I have not received the courtesy of a reply to my letter.

In yet another instance of his ongoing efforts to cooperate with the Hospital, Dr. Hughes is willing to go forward with the cross-coverage arrangement with Dr. Lew through October 16, 2001. I would hope to use these next two (2) weeks to address the issues raised in my September 18th letter.

I look forward to your prompt response.

Very truly yours,

Mark D. Engel

MDE/sb
cc:     Dr. Deurward L. Hughes
         Ms. Sharon Claus-Zanger (via facsimile (508) 693-3956)

0047

# Exhibit 25

### Joint Conference Committee
December 6, 2002

A meeting of the Joint Conference Committee was held on Friday, December 6, 2002 at 12:00 noon in the Southside Conference Room. Present were: Tim Sweet, Acting Chairman, Tim Walsh, Ellen Leone, Sharon Clauss-Zanger, Art Smadbeck, Dr. Hoak, Dr. London, Dr. Nieder, Dr. Yukevich, and Dr. Lew.
The meeting began at 12:25 p.m.

### Review of Minutes
A MOTION was made to accept the minutes of 11/01/02 as written. The MOTION was SECONDED and APPROVED.

### Old Business

OB/GYN review process – Dr. London would like to bring Dr. Shah in regularly to review charts via teleconferencing and quarterly in person until someone is appointed who will be on-site permanently to review charts. Dr. Shah will be scheduled for January quarterly meeting.

### Departmentalization

There was a lengthy discussion about creating a department of OB/Gyn and if it would fall under primary care and how to select a chairperson. Dr. London promotes the concept of OB/Gyn within the department, while Dr. Nieder feels that it does not belong under primary care. Dr. Lew feels there is no collegiality between OB/Gyn staff. Internally, it seems incredibly difficult to work the attitude/divisional problems out. Tim Sweet suggested that we might need unbiased outside help with this process. Dr. London said there would be a need for a full-time Medical Staff Secretary for the increasing Medical Staff business needs.



CONFIDENTIAL
MVH 0299

REDACTED

### Adjournment

There being no further business, the meeting was adjourned circa 1:10 P.M. **The next meeting will be scheduled for Friday, January 10, 2003 at 12:00 noon. Lunch will be served.**

Respectfully submitted,


Cynthia McIntosh
Executive Secretary to the CEO

**CONFIDENTIAL**
**MVH 0300**

# Exhibit 26

BUSINESS MINUTES    Date                                                    Page

## Meeting
## Of the
## Board of Trustees
## For
## Martha's Vineyard Hospital

### January 27, 2001

#### 9:30am

**Present:** Ted Morgan – Chairman; Kevin Burchill, Greg Culley, Daniel Kaplan, John MacArthur, M.D., Earle Ray, Arthur Smadbeck, Tim Sweet, Justin Wyner, Margaret Regan, Joseph Carter, John MacKenty, Kathleen Koehler, M.D., Maia Gaillard (guest)

**Also Present:** Tim Walsh, CFO and John MacKenty, WNR Board Chairman

**Excused:** Charles Harff, John Ferguson, Louis Sullivan, M.D.

**Guests:** Maia Gaillard – Community Relations, Martha's Vineyard Hospital



**CONFIDENTIAL**
**MVH 0303**

BUSINESS MINUTES    Date

REDACTED

2

CONFIDENTIAL
MVH 0304

Page

REDACTED

3

CONFIDENTIAL
MVH 0305

REDACTED

There was discussion regarding the Dr. Hughes/Kriedman team. Medical Staff had feelings that age had much to do with the mixed feelings of Dr. Hughes working in Maternity. Also there has been discussion to change the by-laws of the Medical Staff due to their lack of clarity. Dr. MacArthur does not want to begin that process until after the Hughes/Kriedman credentials are in place.

12. Adjournment. There being no further business, the meeting was adjourned at 1:10pm.

Respectfully Submitted,

*Alleyne Hughes*

Alleyne Hughes
Executive Assistant
/amh

4

**CONFIDENTIAL**
**MVH 0306**